IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRIS TOLAR, individually and as representative of all persons similarly situated, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO.: 3:09-CV-436 |
| ALLSTATE TEXAS LLOYDS COMPANY | § § § | |
| Defendant. | § § | |

## BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, CHRIS TOLAR ("Plaintiff") and files this Brief in Support of Plaintiff's

Motion For Partial Summary Judgment against Defendant Allstate Texas Lloyds Company

("Allstate") and would respectfully show the Court as follows:

### I.

### INTRODUCTION

Allstate has and is engaged in a scheme to methodically and significantly enrich itself by

underpaying Texas homeowner policyholders amounts owed to them for general contractor overhead

and profit ("GCOP") and for sales tax.

As a matter of general practice in Texas, Allstate depreciates general contractor overhead and

profit or sales tax from an actual cash value payment.[1]

Plaintiff asserts that under a reasonable interpretation of the Allstate policy terms "actual cash

value" and "depreciation," Allstate cannot depreciate general contractor overhead and profit or sales

---

[1] In its Notice of Removal, Allstate claims that the putative class is in excess of 20,000 insureds and that the amount in controversy is "approximately $34,780,000.00." *See* Notice of Removal p. 3, 6.

tax from an actual cash value payment. Fundamental to this lawsuit is the issue of the <u>ambiguity</u> of the terms "actual cash value" and "depreciation" in the Allstate's homeowner policies and whether the Plaintiff's interpretation of the ambiguity is reasonable. If so, then under established Texas law and the doctrine of *contra proferentem*, Plaintiff's interpretation prevails. This motion seeks an adjudication of the policy interpretation as a matter of law.

## II.

## STATEMENT OF FACTS

This action seeks to recover damages suffered by Plaintiff and the putative class members, as a result of Allstate's unfair claim settlement practices and breach of contract in failing to pay insurance benefits by the depreciation of general contractor overhead and profit ("GCOP") and sales tax on materials needed for repairs. Plaintiff and putative class members are property owners whose Texas homes are insured by Allstate. *See* Plaintiff's First Amended Class Action Petition (hereafter "Amd. Petition") p. 4-5, sec. V; *see also* the Affidavit of Chris Tolar (the "Tolar Affidavit") at ¶ 2 (P. App. 2).

On or about April 13, 2007, Plaintiff had in full force and effect a policy of property damage insurance issued by Allstate on his home (the "Property"). *See* Amd. Petition p. 2-3, sec. IV and Tolar Affidavit at ¶ 3 (P. App. 3).

The Property sustained storm damage on or about April 13, 2007 and Plaintiff filed a claim with Allstate under his homeowner's insurance policy. Plaintiff suffered covered losses identified in Estimate prepared by Allstate. *See* Amd. Petition p. 2-3, sec. IV and the Estimate attached to the Tolar Affidavit at ¶ 3 (the "Estimate") (P. App. 48-53).

Plaintiff made a claim for benefits under the Allstate policy issued by Allstate. Allstate was obligated to pay the value of lost or damaged property covered by the Allstate policy. *See* Amd.

Petition p. 4-5, sec. V and the Policy attached to the Tolar Affidavit at ¶ 3 (the "Policy") (P. App. 41-43).

Allstate's insurance policy providing coverage to Plaintiff provided in pertinent part that Allstate would pay the cost to repair or replace the insured's property damaged by a covered loss, in an amount no more than the actual cash value of the damage until actual repair or placement is complete. *See* Amd. Petition p. 3, sec. IV and Policy (P. App. 43). The Policy further provides that Allstate will pay, in advance of the actual repair or replacement of a covered loss, the "actual cash value" (hereafter "ACV"). *See id.*

The Texas Department of Insurance ("TDI") in two separate bulletins has affirmatively stated that, "The insured continues to be entitled to reasonable and necessary expenses to repair or replace the damaged property, less proper deduction for depreciation. These expenses would include the services of a general contractor. The deduction of prospective general contractors' overhead and profit and sales tax, in addition to depreciation in calculating actual cash value, is an improper claim settlement practice on polices that provide coverage on an actual cash value or replacement cost basis" (TDI Commissioner's Bulletin No. B-0068-08), and "there is no situation in which the deduction for replacement cost of depreciation and contractor's profit and overhead and for sales tax on materials will be the correct measure of the insured's loss" (TDI Commissioner's Bulletin No. B 0045-98). Amd. Petition p. 3-4, sec. IV; *see also* certified copies of Bulletin No. B 0045-98 and Bulletin No. B-0068-08 attached to Plaintiff's Appendix as Exhibits B and C, respectively (P. App. 54-62).

Rather than fulfill its contractual duties to its insureds, Allstate depreciated both GCOP and sales tax on Plaintiffs' and members of the putative class' ACV payment. In so doing, Allstate engaged in unfair claim settlement practices in violation of the Texas Insurance Code and breached its contractual obligations. *See* Amd. Petition p. 4, sec. IV and Estimate (P. App. 48-53).

### III.

### THE POLICY TERMS "ACTUAL CASH VALUE" AND "DEPRECIATION" ARE AMBIGUOUS AND PLAINTIFF'S INTERPRETATION OF THE POLICY IS REASONABLE AND MUST BE FOLLOWED.

The terms "actual cash value" and "depreciation" are used in the Allstate's standard homeowner insurance policies, including Plaintiff's, but are undefined in those policies. *See* Policy (P. App. 5-47). Plaintiff moves to have the Court adjudicate that the terms are ambiguous and under the doctrine of *contra proferentem,* the policy terms must be construed in favor of the insured and against the insurer.

Under Plaintiff's reasonable interpretation of the terms "actual cash value" and "depreciation," an insurer is <u>not permitted</u> under the policy to depreciate general contractor overhead and profit or sales tax from an actual cash value payment.

Construing the terms "actual cash value" and "depreciation" in a manner consistent with Texas law, Plaintiff's interpretation that an insurer is <u>not permitted</u> to depreciate general contractor overhead and profit or sales tax from an actual cash value payment is a reasonable interpretation.

### A.   Texas Law Favors Plaintiff's Interpretation Of The Ambiguous Terms "Actual Cash Value" And "Depreciation" In The Policy.

In the First Amended Class Action Petition, Plaintiff specifically alleges "Defendant's policy provisions are ambiguous, fail to define what items of loss are recoverable, and fail to define how ACV is calculated." Amd. Petition, p.3.

Therefore, central to this lawsuit is the issue of the ambiguity of meaning of ACV and depreciation in the Texas Allstate policies and whether the Plaintiff's interpretation of the alleged ambiguity is reasonable. If so, the Court must construe the policy terms in favor of the insured and against the insurer. *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

**B.    Ambiguity Exists In The Policy Concerning "Actual Cash Value" and "Depreciation."**

To be ambiguous, the contract must be capable of more than one reasonable interpretation.

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Where ambiguity is

at issue, the existence of an ambiguity is a question of law. *See Progressive County Mutual Ins. Co.*

*v. Kelley*, 2009-TX-0330.646 (Tex. March 27, 2009); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d

223, 229 (Tex. 2003).

If the policy is susceptible to more than one reasonable interpretation, then the policy is

ambiguous. *See Kelley-Coppedge, Inc.*, 980 S.W.2d at 464; *Grain Dealers Mut. Ins. Co. v. McKee*,

943 S.W.2d 455, 458 (Tex. 1997); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("A contract . .

. is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more

than one meaning."). The determination of whether a contract is ambiguous may only be made after

the entire contract is examined in light of the circumstances that existed when the contract was

formed. *State Farm Fire and Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998).

Plaintiff's interpretation of the Policy is reasonable as confirmed by the TDI

Bulletins. In TDI Commissioner's Bulletin No. B-0068-08 it is stated:

> The insured continues to be entitled to reasonable and necessary expenses to repair or
> replace the damaged property, less proper deduction for depreciation.  These
> expenses would include the services of a general contractor. The deduction of
> prospective general contractors' overhead and profit and sales tax, in addition to
> depreciation in calculating actual cash value, is an improper claim settlement practice
> on polices that provide coverage on an actual cash value or replacement cost basis.

TDI Bulletin No. B-0068-08, Exhibit C (P. App. 61). In TDI Commissioner's Bulletin No. B

0045-98 it is stated:

> [T]here is no situation in which the deduction for replacement cost of depreciation
> and contractor's profit and overhead and for sales tax on materials will be the correct
> measure of the insured's loss.

TDI Bulletin No. B 0045-98, Exhibit B (P. App. 57). Construing the terms "actual cash value" and

"depreciation" in a manner which is consistent with the Texas law and the TDI Bulletins supports Plaintiff's interpretation that an insurer is <u>not permitted</u> to depreciate general contractor overhead and profit or sales tax from an actual cash value payment.

Moreover, any interpretation proffered by Allstate to the contrary, i.e., that an insurer is permitted to depreciate GCOP or sales tax from an ACV payment is in conflict with Allstate own representations to its policyholders. In the Allstate estimate provided to Plaintiff by Allstate in this case (and presumably to other policyholders), it states:

> **PLEASE NOTE: "Actual Cash Value is defined as the amount it would take to repair or replace damage to your home less depreciation. Depreciation, when applied in this estimate, is the decrease of the property's value due to age, wear and tear (condition) or obsolescence, except where otherwise noted."**

Tolar Affidavit - Estimate (P. App. 53). This "Note" makes it clear that Allstate, consistent with Plaintiff, interprets depreciation as limited to that property, and only that property, <u>which suffers from "decrease in value" due to "age," "wear and tear" or "obsolescence."</u> Neither sales tax nor GCOP fall within the type of property, which suffers from "decrease in value" due to "age," "wear and tear" or "obsolescence." The Estimate's definition clearly does not say that <u>all</u> property is subject to depreciation and Allstate can provide no basis for such an interpretation.

While the Estimate's definition clearly does not say that <u>all property</u> is subject to depreciation, Allstate nonetheless depreciated <u>all of the property</u> including GCOP and sales tax from the ACV payment to Plaintiff. *See* Tolar Affidavit - Estimate (P. App. 53). This inconsistency is reflected in Allstate's letter accompanying the Estimate, where it states:

> **Depreciation has been deducted from the full cost of repair or replacement to your property to determine the actual cash value.**

Tolar Affidavit - Estimate (P. App. 49). The Allstate letter apparently asserts that <u>all property</u> is subject to depreciation but Allstate can provide no basis for such an interpretation consistent with its own definition in the Estimate.

In light of the foregoing, it is reasonable to interpret "depreciation" as being limited to only that property, which suffers from "decrease in value" due to "age," "wear and tear" or "obsolescence."2

**C.   In An Insurance Contract, Where A Provision Is Subject To Two Or More Reasonable Interpretations, The Court Must Adopt The Interpretation Which Favors The Insured.**

In cases of ambiguity in an insurance policy, the Texas courts apply the doctrine of *contra proferentem* and construe the policy in favor of the insured and against the insurer on the theory that the insurer drafted the policy and should bear the adverse consequences for doing so with less than absolute clarity. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d at 938. The court must adopt the insured's interpretation even if the insurer's interpretation is more reasonable or makes more sense in the context of the entire policy. *See State Farm Fire and Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) (construing ambiguous limit of liability provision in an insurance policy against the insurance company). Accordingly, because of the doctrine of *contra proferentem*, the resolution and determination of the ambiguity issue becomes an issue for the Court to decide as a matter of law.3

**D.   Allstate's ACV Obligations Under The Standard Policy Are Ambiguous And Plaintiff's Interpretation Is Reasonable.**

At a minimum, an ambiguity exists here because there are two reasonable interpretations of the Policy. The Policy does not define "actual cash value" or "depreciation" nor does it define how ACV is to be calculated and is silent as to when GCOP and sales tax are owed or subject to

---

2 Allstate even recognizes this point by its citation to Section 2051 of the California Insurance Code on p. 7 of its previously denied Motion to Dismiss ("measure of indemnity is 'the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for **physical depreciation'**).

3 In the absence of *contra proferentem*, the ambiguity issue would be a fact issue for a jury. *See J. M. Davidson Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Coker*, 650 S.W.2d at 394.

deprecation. Based on these non-explicit policy provisions, Allstate believes that the Policy allows it to deduct and "depreciate" portions of GCOP and sales tax in addition to deducting physical depreciation of the damaged property from the ACV payment. On the other hand, Plaintiff reasonably believes that once Allstate made the determination that GCOP and sales tax were covered and owed under the Policy, it could not then deduct and "depreciate" portions of GCOP and sales tax from the ACV payment. Indeed, the estimates Allstate performed and provided to its insureds (and statements contained therein) confirm that Allstate's systematic and calculated practice of depreciating GCOP and sales tax conflicts with its obligations under the Policy. *See* Tolar Estimate (P. App. 53).

Because Plaintiff's interpretation of the Policy is reasonable, this Court must adopt his construction, even if this Court believes Allstate's interpretation is more reasonable or represents a more accurate reflection of the parties' intent. *See Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 741 (Tex. 1998).

**E.     Allstate's Depreciation Of GCOP And Sales Tax Is A Disguised Attempt To Improperly Withhold A Portion Of The GCOP And Sales Tax Owed.**

Allstate has argued that sales tax and GCOP are appropriately depreciated in an ACV payment based on the district court opinion from *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928 (N.D. Tex. 2001). But Allstate is wrong. In *Ghoman*, the district court determined that GCOP and sales tax are items of loss which must be *included,* not excluded, in the "actual cash value," or upfront payment. The Court held that when GCOP and sales tax are owed, they are not subject to "withholding." In other words, the insured is not required to perform repairs or incur the expense in order to be entitled to receive payment for GCOP and sales tax. Further, the Court held that by withholding GCOP and sales tax from plaintiff's actual cash value payment, the insurer breached its obligations under the insurance policy. *See id.* In *Ghoman*, Judge Kaplan stated:

> The court concludes that "actual cash value" under the policy means repair or replacement costs less depreciation. "[R]epair or replacement costs include any cost that an insured is reasonably likely to incur in repairing or replacing a covered loss." [Citations] ... [ftn] Contractor's overhead and profit and sales tax clearly fit this definition. These amounts should be included in the actual cash value award.

*Ghoman*, 159 F. Supp. 2d at 934.4  Despite *Ghoman's* holding that repairs are not required to be performed in order for the insured to be entitled to receive GCOP and sales tax, Allstate's policy and practice requires insureds to perform repairs in order to receive the "depreciated" percentage of GCOP and sales tax "withheld" from the ACV payment.5

Allstate's attempt to characterize its illegal withholding of a percentage of the GCOP owed as "depreciation" does not withstand scrutiny of the applicable law.  In light of *Ghoman*, Plaintiff and the putative class members have clearly set forth reasonable interpretations of the terms "actual cash value" and "depreciation" revealing an ambiguity in the Policy.  That ambiguity must be resolved in favor of the insureds under the doctrine of *contra proferentem*.

F.    **Trade Usages And Practices Of Texas Insurers Supports Plaintiff's Argument That An Insurer Is <u>Not Permitted</u> To Depreciate GCOP Or Sales Tax From An Actual Cash Value Payment.**

In *National Union Fire Ins.* v. *CBI Industries*, 907 S.W.2d 517 (Tex. 1995) the Texas Supreme Court held that extrinsic evidence such as trade usage "may, indeed, be admissible to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to 'interpret' contractual terms." *See also Miller v. Gray*, 149 S.W.2d 582, 583 (Tex. 1941) (trade usage and custom are admissible to explain a contract's meaning as long as such explanations do not contradict the written agreement).  Plaintiff's interpretation is consistent with the trade usages and practices of other major Texas insurers.  For example, Farmers Insurance, one of Texas' largest insurers, follows

---

4 Allstate position that it is permitted to deduct a part or fraction of GCOP and sales tax in the ACV payment as "depreciation" is not supported by the language of the Policy, the Estimate, or Texas law.

5 If Allstate is not allowed to withhold any portion of the GCOP and sales tax owed, then it is not allowed to withhold 40% or 10% or any other percentage of the GCOP and sales tax owed.

the interpretation in which an insurer is <u>not permitted</u> to depreciate GCOP from an actual cash value payment. *See* Affidavit of Greg Achee (the "Achee Affidavit") at ¶ 2; *see also* Exhibit B of the Achee Affidavit – Farmer's Adjuster Guidelines (P. App. 63-70).  Mr. Achee, a former claims supervisor for Farmer's Insurance, has indicated that Farmers Insurance calculates GCOP owed based on the full replacement cost and does not depreciate GCOP from its insured's ACV payments. *See id.*  Mr. Achee's sworn affidavit further indicates that Farmers Insurance issued numerous adjuster guidelines stating that GCOP is not subject to depreciation. *See id.*  Specifically, the GCOP guidelines that Farmers Insurance distributed states:

> WHEN O&P IS PAYABLE – When reviewing the extent and types of repairs, if it is reasonably likely that the services of a general contractor will be necessary to manage, supervise and coordinate the repairs, then O&P is a cost of ACV, and must be included when the initial ACV payment is made. ***Note that the O&P is not depreciable.***  Further, it does not matter whether the insured states he or she will not actually be using a general contractor, whether the insured intends to make the repairs himself or herself, or whether the insured does not even intend to make the repairs - - O&P must be included in the initial ACV payment.

Achee Affidavit – Exhibit B (emphasis added) (P. App. 70).

## IV.

## CONCLUSION

Rather than fulfill its contractual duties to its insureds, Allstate depreciated and "withheld" GCOP and sales tax on Plaintiff's and members of the putative class' actual cash value payments. In so doing, Allstate breached its contractual obligations and engaged in unfair claim settlement practices in violation of the Texas Insurance Code.  Accordingly, Plaintiff's motion for partial summary judgment should be granted.

Respectfully submitted,

/S/ B. William Bailey
B. William Bailey
State Bar No. 24006191

**LAW OFFICES OF BILL BAILEY, PLLC**
101 W. Renner Road, Suite 220
Richardson, Texas 75082
Telephone:     972.470.0022
Facsimile:      972.470.0025

**LAW OFFICES OF HOWARD A. SNYDER**
Howard A. Snyder, Esq.
15165 Ventura Blvd., Suite 400
Sherman Oaks, California 91403
Telephone:     818.461.1790
Facsimile:      818.461.1793

**GRUBER & GRUBER**
Daniel S. Gruber, Esq.
15165 Ventura Blvd., Suite 400
Sherman Oaks, California 91403
Telephone:     818.981.0066
Facsimile:      818.981.2122

**LAW OFFICES OF JAMES B. KROPFF**
James B. Kropff, Esq.
283 South Lake Ave., Suite 200
Pasadena, California 91101
Telephone:     626.796.4070
Facsimile:      626.796.4073
ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASS

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 30th day of April, 2010, I electronically filed and served on the following attorneys of record the foregoing document using the electronic case filing system of the Court:

Roger Higgins
Brad Burdette
Thompson, Coe, Cousins & Irons, LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201

/S/ B. William Bailey
B. William Bailey

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** - Page 11