## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CHRIS TOLAR, individually and as representative of all persons similarly situated, | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. 3:09-CV-436 |
| VS. | § | JURY |
| | § § | |
| ALLSTATE TEXAS LLOYDS COMPANY, | § § | |
| | § | |
| Defendant. | § | |

## APPENDIX TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 7.1, Plaintiff files this Appendix to his Motion for Partial Summary Judgment.

| **Exhibit** | **Description** | **Page Number** |
|---|---|---|
| Exhibit A | Affidavit of Chris Tolar | 1 - 53 |
| Exhibit 1 | Policy No. 944209277 | 4 - 47 |
| Exhibit 2 | Letter and Estimate dated October 3, 2007 | 48 - 53 |
| Exhibit B | Certified Copy of TDI Bulletin No. B-0045-98 | 54 - 58 |
| Exhibit C | Certified Copy of TDI Bulletin No. B-0068-08 | 59 - 62 |
| Exhibit D | Affidavit of Greg Achee | 63 - 70 |

Respectfully submitted,

/S/ B. William Bailey
B. William Bailey
State Bar No. 24006191

**LAW OFFICES OF BILL BAILEY, PLLC**
101 W. Renner Road, Suite 220
Richardson, Texas 75082
Telephone:    972.470.0022
Facsimile:     972.470.0025

**LAW OFFICES OF HOWARD A. SNYDER**
Howard A. Snyder, Esq.
15165 Ventura Blvd., Suite 400
Sherman Oaks, California 91403
Telephone:     818.461.1790
Facsimile:     818.461.1793

**GRUBER & GRUBER**
Daniel S. Gruber, Esq.
15165 Ventura Blvd., Suite 400
Sherman Oaks, California 91403
Telephone:     818.981.0066
Facsimile:     818.981.2122

**LAW OFFICES OF JAMES B. KROPFF**
James B. Kropff, Esq.
283 South Lake Ave., Suite 200
Pasadena, California 91101
Telephone:     626.796.4070
Facsimile:     626.796.4073

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 30th day of April, 2010, I electronically filed the foregoing document using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Roger Higgins
Brad Burdette
Thompson, Coe, Cousins & Irons, LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201

/S/ B. William Bailey
B. William Bailey

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CHRIS TOLAR, individually and as representative of all persons similarly situated, | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. 3:09-CV-436 |
| VS. | § | JURY |
| | § | |
| ALLSTATE TEXAS LLOYDS COMPANY, | § § | |
| | § | |
| Defendant. | § | |

### AFFIDAVIT OF CHRIS TOLAR

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared CHRIS TOLAR, known to me, who, after being first duly sworn, deposed and stated:

1.      "My name is Chris Tolar. I am over 18 years of age, of sound mind, and capable of making this affidavit. I have personal knowledge of the facts stated herein and such facts are all true and correct.

2.      "I had in full force and effect a policy of property damage insurance, Policy No. 000944209277 (the 'Policy'), issued by Allstate Texas Lloyds ('Allstate') on the real property located at 1621 Hearthstone Dr., Plano, Texas 75023 (the 'Property'). A true and correct copy of the Policy is attached hereto as Exhibit '1' and incorporated by reference as if set forth fully herein. I am the owner of the Property.

**EXHIBIT "A"**

2

3.      "The Property sustained damage as a result of a storm and I filed a claim with Allstate under the Policy, claim number 0104861380. Allstate inspected the Property and prepared a letter and an estimate of the Property's damage dated October 3, 2007 (collectively, the 'October 3, 2007 Letter and Estimate'). I received a copy of the October 3, 2007 Letter and Estimate from Allstate. A true and correct copy of October 3, 2007 Letter and Estimate is attached hereto as <u>Exhibit '2'</u> and incorporated by reference as if set forth fully herein.

4.      Shortly after I received the October 3, 2007 Letter and Estimate, I received a payment from Allstate in the amount of $7,701.07.

FURTHER, AFFIANT SAITH NOT.

_____
Chris Tolar

SUBSCRIBED AND SWORN TO BEFORE ME on this 27th day of April, 2010, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas



TAMRA J BAILEY
NOTARY PUBLIC
State of Texas
Comm. Exp. 02-14-2011

# EXHIBIT 1

4

**Allstate Texas Lloyd's**
A Lloyd's Company
8701 N. Freeport Pkwy. Irving, TX 75063-1908

## NEW

# Texas HO-A-Plus Homeowners Declarations Page

**Summary**        **Allstate Classic**

| NAMED INSURED / MAILING ADDRESS | YOUR ALLSTATE AGENT IS: | CONTACT YOUR AGENT AT: |
|---|---|---|
| Chris Tolar | Lezlee Liljenberg | (817) 794-5887 |
| Apt 708 | 3105 W Arkansas A2 | |
| 6071 Village Bend Dr | Arlington TX 76016 | |
| Dallas TX 75206-3501 | | |

| POLICY NUMBER | POLICY PERIOD | PREMIUM PERIOD |
|---|---|---|
| 9 44 209277 05/22 | Effective date:  May 22, 2006 | May 22, 2006 to May 22, 2007 |
| | Expiration date: May 22, 2007 | at 12:01 A.M. standard time |
| | at 12:01 A.M. standard time | |
| | at the location of the Residence Premises/Dwelling | |

**Residence Premises / Dwelling**     1621 Hearthstone Dr;
                                       Plano, TX 75023-7410

**Addition**

**Lot Block**
See Above

**AGENCY AT** Arlington,TX               **AGENT** Lezlee Liljenberg

## Total Premium for the Premium Period   *(Your bill will be mailed separately)*

| Premium for Property Insured | $916.00 |
|---|---|
| Recoupment Fee Vol Rural Fire Dept Assistance Prg | $0.63 |
| **TOTAL POLICY PREMIUM** | **$916.63** |


5

**EXHIBIT "1"**

ALL-TOL  000003

# Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22      Your Agent:   Lezlee Liljenberg  (817) 794-5887
For Premium Period Effective: May 22, 2006                **Allstate Classic**

| COVERAGES<br>(Other Coverages, Limits and Exclusions apply - Refer to your Policy) | | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|
| **SECTION I** | **PROPERTY** | | |
| Coverage A. | Dwelling | $165,000 | |
| | Other Structures | $16,500 | |
| Coverage B. | Personal Property | $66,000 | |
| | Personal Property Off Premises | $6,600 | |
| **SECTION II** | **LIABILITY** | | |
| Coverage C. | Personal Liability (Each Occurrence) | $300,000 | |
| Coverage D. | Medical Payments to Others (Each Person) | $1,000 | |
| Loss of Use Coverage | | $33,000 | |
| Limited Fungi, Other Microbes or Rot Remediation | | $5,000 | |

| | | |
|---|---|---|
| **BASIC PREMIUM** | | **$888.00** |
| Increased Liability Limits Premium | | $22.00 |

| OTHER COVERAGES AND ENDORSEMENTS | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|
| HO-105 (7-8-92) Residence Glass Coverage | | $6.00 |

| DEDUCTIBLES<br>(SECTION I ONLY) | AMOUNT OF<br>DEDUCTIBLE | DEDUCTIBLE<br>ADJUSTMENT<br>PREMIUM |
|---|---|---|
| Deductible Clause 1 - Windstorm, Hurricane and Hail | $1,650.00<br>1.0% | $0.00 |
| Deductible Clause 2 - All Other Perils | $1,650.00<br>1.0% | $0.00 |

| | | |
|---|---|---|
| **TOTAL POLICY PREMIUM** | | **$916.63** |

(Continued on Next Page)

6

ALL-TOL 000004

## Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22    Your Agent:  Lezlee Liljenberg  (817) 794-5867
For Premium Period Effective: May  22, 2006        Allstate Classic

**DISCOUNTS**    Your premium reflects the following discounts on applicable coverage(s):
Claim Free                                    Supporting Auto
Complete Burglar Alarm System

**RATING INFORMATION**
Key Rate: N/A    Construction: Brick Veneer
Hydrant- Under 500 feet     PPC: 01

PROP *01090042060S16S7001593103*

ALL-TOL 000005

7

# Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22    Your Agent:   Lezlee Litjenberg  (817) 794-5887
For Premium Period Effective: May 22, 2006    **Allstate Classic**

## Subject to the following Forms and Endorsements

Your Homeowners policy consists of this Declarations Page and the documents listed below. Please keep these together.
- Texas Homeowners Policy - Form A (1-1-02)
- AP1205 Texas Replacement Cost for Personal Property
- AP1206 Texas Replacement Cost Coverage A - Dwelling
- HO-105 (7-8-92) Residence Glass Coverage
- HO-470T (02-02) Add Ext Cov w/ Limited Fungi, Microbes or Rot Remediation
- HO-712 (09-03) ICT Cancellation Endorsement

## Mortgagee(s) (Listed in order of precedence)

- EVERETT FINANCIAL INC DBA SUPREME LENDING ISAOA
  ATIMA
  17290 Preston Rd      Dallas TX 75252-4026      Loan #  NONE
- EVERETT FINANCIAL INC DBA SUPREME LENDING ISAOA
  ATIMA
  17290 Preston Rd      Dallas TX 75252-4026      Loan #  NONE

## Important Payment and Coverage Information

The property insurance adjustment condition applies using the Boeckh Publications Building Cost Index developed by The American Appraisal Associates, Inc.

Do not pay. Mortgagee has been billed.

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by two of its officers at Irving, Texas, and if required by state law, this policy shall not be binding unless countersigned on the Declarations Page by an authorized agent of Allstate.

Ron McNeil
President
Allstate Texas Lloyd's

Susan L. Lees
Secretary

ALL-TOL 000006

# Allstate
# Texas Homeowners Policy
# Form A

Policy: 9 44 209277 05/22

Effective: May 22, 2006

Issued to:
Chris Tolar
Apt 708
6071 Village Bend Dr
Dallas TX 75206-3501

By your Allstate agent:
Leziee Liljenberg
3105 W Arkansas A2
Arlington TX 76016



Prescribed by the Texas Department of Insurance
Homeowners Form A—Effective July 8, 1992
(Revised January 1, 2002)

PROP *110004206051857001593112*


AU2130-2

9

ALL-TOL 000023

# QUICK REFERENCE
# TEXAS HOMEOWNERS POLICY — FORM A

Insuring Agreement........................................2
Definitions ....................................................2

**SECTION I — PROPERTY COVERAGE**

Coverage A
  Dwelling .....................................................3
  Other Structures........................................3
Coverage B
  Personal Property ......................................3
  Personal Property Off Premises..............3
Special Limits of Liability................................4
Property Not Covered......................................4
Extensions of Coverage
  Debris Removal ..........................................5
  Loss of Use.................................................5
  Reasonable Repairs ..................................5
  Trees, Shrubs, Plants and Lawns............5
  Property Removed.......................................5
  Consequential Loss ...................................5
  Automatic Removal.....................................6
Perils Insured Against
  Coverage A (Dwelling)...............................6
  Coverage B (Personal Property) ..............6

Exclusions.......................................................7

Deductibles.......................................................9

Section I — Conditions
  Insurable Interest and Limit of Liability...........9
  Residential Community Property Clause .......10
  Duties After Loss
    **Your Duties After Loss** ......................10
    Our Duties After Loss .........................11
  Loss Settlement..........................................11
  Loss to a Pair or Set.................................11
  Salvage Rights...........................................11
  Appraisal.....................................................11
  Loss Payment............................................12
  Catastrophe Claims...................................12
  Other Insurances.......................................12
  Suit Against Us...........................................12
  Abandonment of Property .........................12
  **Vacancy — Suspension of Coverage ......12**
  Mortgage Clause .......................................12
  No Benefit to Bailee ...................................13

**SECTION II — LIABILITY COVERAGE**

Coverage C (Personal Liability)....................13
Coverage D (Medical Payments to Others) ..........14

Exclusions
  Coverage C and D Exclusions...................14
  Coverage C Exclusions.............................16
  Coverage D Exclusions.............................17

Additional Coverages
  Claim Expenses.........................................17
  Imperative Medical Expenses to Others.....17
  Damage to Property of Others .................17

Section II — Conditions
  Limit of Liability.........................................18
  Severability of Insurance..........................18
  **Duties After Loss .....................................18**
  Duties of an Injured Person.......................18
  Payment of Claim under Coverage D.......18
  Suit Against Us...........................................18
  Bankruptcy of the Insured ........................19
  Other Insurance ........................................19
  Notice of Settlement of Liability Claim.........19

**POLICY CONDITIONS**
**APPLYING TO SECTIONS I AND II**

Policy Period ..................................................19
Concealment or Fraud ...................................19
Liberalization Clause .....................................19
Waiver or Change of Policy Provisions ..........19
Cancellation....................................................20
Refusal to Renew...........................................20
Assignment.....................................................21
Subrogation ....................................................21
Death...............................................................21

---

### YOUR DUTIES AFTER A LOSS

Section I:

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

Section II:

1. Do not make any voluntary payments except for first aid to others at the time of the accident.
2. Give written notice to agent or company, including details about the accident and any witnesses.
3. Send copies of legal notices you receive to the company.
4. Help the company get the necessary information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES SEE PAGES 10 AND 18 OF YOUR POLICY.

---

ALL-TOL 000024

# HOMEOWNERS FORM A

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2. **"Business"** includes trade, profession or occupation.

3. **"Business day,"** when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. **"Insured"** means you and residents of your household who are:

   a.  your relatives; or

   b.  other persons under the age of 21 and in the care of any person named above.

   Under Section II Liability, **"insured"** also means:

   c.  any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an **insured**.

   d.  With respect to any vehicle to which this policy applies:

      (1) any employee of an **insured** while engaged in the employment of the **insured**; or

      (2) any other person using the vehicle on an **insured location** with your consent.

5. **"Insured location"** means:

   a.  the **residence premises**.

   b.  the part of other premises, other structures and grounds you use as a residence and:

      (1) which is shown on the declarations page; or

      (2) which you acquire during the policy period for your use as a residence.

   c.  any premises you use in connection with a premises in 5.a. or 5.b. above.

   d.  any part of a premises:

      (1) not owned by an **insured**; and

      (2) where an **insured** is temporarily residing.

   e.  vacant land, other than farm land, owned by or rented to an **insured**.

   f.  land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured**.

HO-A    PROF "11000420605165700159331113"

Page 2

ALL-TOL 000025

11

g.  individual or family cemetery plots or burial vaults of an **insured**.

h.  any part of a premises occasionally rented to an **insured** for other than **business** use.

6.  "**Occurrence**" means an accident, including exposure to conditions, which result in **bodily injury** or **property damage** during the policy period.

7.  "**Property damage**" means injury to, destruction of, or loss of use of property.

8.  "**Residence employee**" means an employee of an **insured** who performs duties related to the ownership, maintenance or use of the **residence premises**, including maintenance or use of a motor vehicle. This includes employees who perform similar duties elsewhere for an **insured**. This does not include employees while performing duties related to the **business** of an **insured**.

9.  "**Residence premises**" means the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an **insured** resides or intends to reside within 60 days after the effective date of this policy.

## SECTION I — PROPERTY COVERAGE

**COVERAGE A (DWELLING)**

We cover:

1.  the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2.  other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of the Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

We do not cover other structures:

a.  used for business purposes; or

b.  wholly rented to any person, unless used solely as a private garage.

3.  wall to wall carpeting attached to a building on the **residence premises**.

**COVERAGE B (PERSONAL PROPERTY)**

We cover:

1.  a.  personal property owned, worn or used by an **insured** while on the **residence premises**. This includes window or wall air conditioning units.

b.  at your request, property of others while the property is on the part of the **residence premises** occupied by an **insured**.

2.  a.  personal property owned, worn or used by an **insured** anywhere in the world.

b.  at your request, personal property of a **residence employee** when:

(1)  the property is away from the residence premises of the **residence employee** and in the control of the **residence employee**; and

HO-A

Page 3

12

ALL-TOL 000026

(2) while the <u>residence employee</u> is
performing work for you.

Our total limit of liability under 2.a. and 2.b.
above is 10% of the Coverage B (Personal
Property) limit of liability or $1,000,
whichever is greater. This is additional
insurance and does not reduce the
Coverage B (Personal Property) limit of
liability.

**SPECIAL LIMITS OF LIABILITY.** These limits do not
increase the Coverage B (Personal Property) limit of
liability. The special limit for each numbered category
below is the total limit for each loss for all property in
that category.

1. Money/Bank Cards. $100 on money or
numismatic property or loss by theft or
unauthorized use of bank fund transfer cards
registered to an <u>insured</u>.

2. Bullion/Valuable Papers. $500 on gold or silver
bullion, manuscripts, notes, securities, stamps,
philatelic property, accounts, bills, deeds,
evidences of debt, letters of credit, passports,
documents, transportation or other tickets.

3. Jewelry/Watches/Furs. $500 for loss by theft of
gems, watches, jewelry or furs.

4. Business Personal Property. $2,500 on
<u>business</u> property.

   We do not cover any <u>business</u> property:

   a. that consists of samples or articles for sale
   or delivery; or

   b. if the property is away from the <u>residence
   premises.</u>

**PROPERTY NOT COVERED.** We do not cover:

1. articles separately described and specifically
insured by this or other insurance.
2. animals or birds.

3. motor or engine propelled vehicles or machines
designed for movement on land, including
attached machinery or equipment.

   However, we do cover such vehicles which are
   not subject to motor vehicle registration and are:

   a. devices and equipment for assisting the
   handicapped.

   b. power mowers.

   c. golf carts.

   d. vehicles or machines used for recreational
   purposes while located on the <u>residence
   premises.</u>

   e. farm equipment not designed for use
   principally on public roads.

4. trailers, semi-trailers or mobile homes.

   However, we do cover:

   a. trailers and semi-trailers that are designed
   for use principally off public roads.

   b. boat trailers while on the <u>residence
   premises.</u>

5. aircraft meaning any device used or designed for
flight, except model or hobby aircraft not used or
designed to carry people or cargo.

6. watercraft, including outboard motors and
furnishings or equipment.

   We do cover watercraft, including outboard
   motors and furnishings or equipment, while
   located on land on the <u>residence premises.</u>

7. property of roomers or tenants.

HD-A                                      Page 4


PROP *11000420905165700159031114*

ALL-TOL 000027

8.   property usually rented to others off the **residence premises**.

**EXTENSIONS OF COVERAGE.**

1.   **DEBRIS REMOVAL.** We will pay your expense for the removal from the **residence premises** of:

a.   debris of covered property if a Peril Insured Against causes the loss.

b.   a tree that has damaged covered property if a Peril Insured Against causes the tree to fall.

This does not increase the limit of liability that applies to the damaged property.

2.   **LOSS OF USE.** If a loss caused by a Peril Insured Against under Section I makes the **residence premises** wholly or partially untenantable, we cover:

a.   additional living expense, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

b.   fair rental value, meaning the fair rental value of that part of the **residence premises** usually rented to others by you, less any expenses that do not continue.

The total limit of liability for all loss of use is 10% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to loss of use coverage.

Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled.

The periods of time for loss of use are not limited by expiration of this policy.

3.   **REASONABLE REPAIRS.** If a Peril Insured Against causes the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4.   **TREES, SHRUBS, PLANTS AND LAWNS.** We cover trees, shrubs, plants and lawns, on the **residence premises,** only for loss caused by the following Perils Insured Against: Fire or Lightning, Explosion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism and Malicious Mischief, Riot and Civil Commotion and Theft or attempted theft.

The limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability. We will not pay more than $250 for any one tree, shrub or plant, including the cost of removal. We do not cover property grown for **business** purposes.

This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to trees, shrubs, plants and lawns.

5.   **PROPERTY REMOVED.** We pay for expense and damage incurred in the removal of covered property from an **insured location** endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such property is removed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

6.   **CONSEQUENTIAL LOSS.** We insure:

a.   property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of

HO-A

Page 5

*14*

ALL-TOL 000028

physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

b.  property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

The total limit of liability for the coverage described in 6.b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7.  **AUTOMATIC REMOVAL.** If you move from the **residence premises** shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

a.  the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property).

b.  property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

## SECTION I — PERILS INSURED AGAINST

### COVERAGE A (DWELLING) AND COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Coverage A (Dwelling) and Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1.  **Fire and Lightning.**

2.  **Sudden and Accidental Damage from Smoke.**

    This peril does not cover loss caused by smog or by smoke from industrial or agricultural operations.

3.  **Windstorm, Hurricane and Hail.**

    This peril does not cover:

    a.  loss to the following:

        (1)  cloth awnings, greenhouses and their contents, buildings or structures

located wholly or partially over water and their contents.

        (2)  radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, wind chargers and windmills.

    b.  loss caused by rain, snow, sand or dust, whether or not driven by wind, unless the direct force of wind or hail makes an opening in the roof or wall and the rain, snow, sand or dust enters through this opening and causes the damage.

4.  **Explosion.**

5.  **Aircraft and Vehicles.**

    This peril does not cover loss caused by any vehicle owned or operated by an occupant of the **residence premises.**

6.  **Vandalism and Malicious Mischief.**

HO-A

Page 6

PROP *11000420606165700159311S*



15

ALL-TOL 000029

7.   **Riot and Civil Commotion.**

8.   **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

The peril does not cover:

a.   personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured,** except while an **insured** is temporarily living there.

b.   personal property while away from the **residence premises** and unattended in or on any motor vehicle or trailer, other than a public conveyance, unless all its doors, windows and other openings are closed and locked and there are visible marks of forcible entry.

Property is not unattended when the **insured** has entrusted the keys of the vehicle to a custodian.

c.   building materials and supplies not on the **residence premises.**

## SECTION I — EXCLUSIONS

1.   We do not cover property described under Coverage A (Dwelling) or Coverage B (Personal Property) for loss caused by any of the following. These exclusions do not apply to an ensuing loss caused by fire, smoke or explosion.

a.   We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

b.   We do not cover loss caused by or resulting from flood, surface water, waves, tidal water of tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

2.   **GOVERNMENTAL ACTION.**

We do not cover loss caused by the destruction of property by order of governmental authority.

But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

3.   **BUILDING LAWS.**

We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

"Building Laws" exclusion is modified to provide coverage only to the extent described under Perils Insured Against.

a.   Coverage Provided.

You may use up to $5,000 (at no additional premium) for the increased costs that you incur due to the enforcement of any ordinance or law, which requires or regulates:

(1)   the construction, demolition or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2)   the demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage

HO-A

Page 7

ALL-TOL 000030

16

by a Peril Insured Against to another part of that covered building or other structure; or

(3) the remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

You may use all or part of this coverage to pay for the increased costs you incur to remove debris resulting from the construction, repair or replacement of property as stated in (a) above.

This is additional insurance and does not reduce Coverage A (Dwelling) the limit of liability.

b.  Building Ordinance or Law Coverage Limitations.

We will not pay for the increased cost of construction:

(1) if the building or structure is not rebuilt or repaired;

(2) if the rebuilt or repaired building or structure is not intended for the same type occupancy as the current building or structure;

(3) until the building or structure is actually repaired or rebuilt at the same premises; or

(4) unless the rebuilding or repairs are made as soon as reasonably possible after the loss or damage, not to exceed 365 days after loss unless you have requested in writing that this time limit be extended for an additional 180 days.

c.  We do not cover:

(1) the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) the costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

d.  If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

All other Terms of the policy apply.

4.  WAR DAMAGE.

We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

5.  NUCLEAR DAMAGE.

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover

HO-A

PROP *TH00942060516570019931116*

17

ALL-TOL 000031

direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

6. **MOLD, FUNGI OR OTHER MICROBES.**

We do not cover loss caused by or resulting from mold, fungi or other microbes.

This exclusion does not apply to an ensuing loss caused by fire, smoke, or explosion.

However, we do cover ensuing mold, fungi or other microbial losses caused by or resulting from sudden and accidental discharge, leakage or overflow of water if the sudden and accidental discharge, leakage or overflow of water loss would otherwise be covered under this policy.

Sudden and accidental shall include a physical loss that is hidden or concealed for a period of time until it is detectable. A hidden loss must be reported to us no later than 30 days after the date you detect or should have detected the loss.

For purposes of this exclusion, ensuing mold, fungi or other microbial losses covered under this policy include reasonable and necessary repair or replacement of property covered under Coverage A (Dwelling) and/or Coverage B (Personal Property).

We do not cover the cost for remediation, including testing of ensuing mold, fungi or other microbes. We do not cover any increase in expenses for Loss of Use and/or Debris Removal due to remediation and testing of ensuing mold, fungi or other microbes.

Remediate means to treat, remove or dispose of mold, fungi or other microbes beyond that which is required to repair or replace the covered property physically damaged by water. Remediation includes any testing to detect, measure or evaluate mold, fungi or other microbes and any decontamination of the **residence premises** or property.

---

## SECTION I — DEDUCTIBLES

**DEDUCTIBLE CLAUSE I — WINDSTORM, HURRICANE AND HAIL.** — The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane or hail.

**DEDUCTIBLE CLAUSE 2 — ALL OTHER PERILS** — The amount shown on the declarations page

for Deductible Clause 2 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property), unless the loss results from windstorm, hurricane or hail.

If a single event causes loss by windstorm, hurricane or hail and loss by lightning, only the larger deductible will apply.

---

## SECTION I — CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the **Insured** for more than the amount of the **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

HO-A

Page 9

18

ALL-TOL 000032

Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2.  **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3.  **Duties After Loss.**

    a.  **Your Duties After Loss.** In case of a loss to covered property caused by a peril insured against, you must:

        (1)  give prompt written notice to us of the facts relating to the claim.

        (2)  notify the police in case of loss by theft.

        (3)  (a)  protect the property from further damage.

             (b)  make reasonable and necessary repairs to protect the property.

             (c)  keep an accurate record of repair expenses.

        (4)  furnish a complete inventory of damaged personal property showing

the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

(5)  as often as we reasonably require:

     (a)  provide us access to the damaged property.

     (b)  provide us with pertinent records and documents we request and permit us to make copies.

     (c)  submit to examination under oath and sign and swear to it.

(6)  send to us if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

     (a)  This proof of loss shall state, to the best of your knowledge and belief:

          (i)   the time and cause of loss.

          (ii)  the interest of the **insured** and all others in the property involved including all liens on the property.

          (iii) other insurance which may cover the loss.

          (iv)  the actual cash value of each item of property and the amount of loss to each item.

HO-A

PROP *11009/20095165700/1593117*



*19*

ALL-TOL 000033

b. **Our Duties After Loss.**

(1) Within 15 days after we receive your written notice of claim, we must:

   (a)  acknowledge receipt of the claim.

If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment.

   (b)  begin any investigation of the claim.

   (c)  specify the information you must provide in accordance with "Your Duties After Loss" (item 3.a. above).

We may request more information, if during the investigation of the claim such additional information is necessary.

(2) After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

   (a)  within 15 business days; or

   (b)  within 30 days if we have reason to believe the loss resulted from arson.

(3) If we do not approve payment of your claim or require more time for processing your claim, we must:

   (a)  give the reasons for denying your claim; or

   (b)  give the reasons we require more time to process your claim. But, we must either approve or deny

your claim within 45 days after requesting more time.

4. **Loss Settlement.** Our limit of liability and payment for covered losses under Section I Property Coverage will not exceed the smallest of the following:

   a.  the actual cash value at the time of loss determined with proper deduction for depreciation;

   b.  the cost to repair or replace the damaged property with material of like kind and quality, with proper deduction for depreciation; or

   c.  the specified limit of liability of the policy.

5. **Loss to a Pair or Set.** In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. The importance of the item will be considered in assessing the loss. Such loss will not be considered a total loss of the pair or set.

6. **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss or the cost of repair, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item.

*20*

ALL-TOL 000034

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8.  **Loss Payment.**

    a.  If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

    b.  If payment of you claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9.  **Catastrophe Claims.**

    If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

    Catastrophe or Major Natural Disaster means a weather related event which:

    a.  is declared a disaster under the Texas Disaster Act of 1975; or

    b.  is determined to be a catastrophe by the State Board Insurance.

10. **Other Insurance — Section I.** Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

11. **Suit Against Us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12. **Abandonment of Property.** There can be no abandonment of property to us.

13. **Vacancy.** If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. The coverage will remain suspended during such vacancy.

14. **Mortgage Clause (without contribution).**

    a.  The word "mortgagee" includes trustee.

    b.  We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

    c.  The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

        (1) at our request, pays any premiums due under this policy, if you have failed to do so.

        (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

HO-A

PROP *1100042080516570015931I8*



21

ALL-TOL 000035

(3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you fail to comply with the terms of this policy:

(1) the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

(2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

h. If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the non-renewal.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

---

## SECTION II — LIABILITY COVERAGE

**COVERAGE C (Personal Liability)**

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable. Damages include pre-judgment interest awarded against the insured; and

HO-A

22

ALL-TOL 000036

2. provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**COVERAGE D (Medical Payments to Others)**

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household. This coverage does apply to residence employees. As to others, this coverage applies only:

1. to a person on the insured location with the permission of an insured.

2. to a person off the insured location, if the bodily injury:

   a. arises out of a condition on the insured location or the ways immediately adjoining.

   b. is caused by the activities of an insured.

   c. is caused by a residence employee in the course of the residence employee's employment by an insured.

   d. is caused by an animal owned by or in the care of an insured.

## SECTION II — EXCLUSIONS

1. **Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

   a. bodily injury or property damage which is caused intentionally by or at the direction of the insured;

   b. bodily injury or property damage arising out of or in connection with a business engaged in by an insured. But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

   c. bodily injury or property damage arising out of the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply to the rental or holding for rental of an insured location:

      (1) on an occasional basis if used only as a residence.

      (2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

   (3) in part, as an office, school or studio.

   (4) if the rental is for not more than three car spaces or stalls in garages or stables.

   d. bodily injury or property damage arising out of the rendering of or failure to render professional services.

   e. bodily injury or property damage arising out of a premises:

      (1) owned by an insured;

      (2) rented to an insured; or

      (3) rented to others by an insured;

      that is not an insured location.

   This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured.

   f. bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

HO-A

PROP *11000420695185700153391 19*

Page 14

ALL-TOL 000037

23

(1) motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

(2) trailers, semi-trailers or mobile homes;

which are owned or operated by or rented or loaned to an **insured**.

However, this exclusion does not apply to:

(1) motor vehicles which are not subject to motor vehicle registration and are:

  (a) used for assisting the handicapped.

  (b) used to service an **insured location.**

  (c) golf carts while on the **residence premises** or used for golfing purposes.

  (d) designed and used for recreational purposes; and are:

    (i) not owned by an **insured**; or

    (ii) owned by an **insured** while on the **residence premises.**

  (e) in dead storage on the **residence premises.**

  (f) used exclusively on the **residence premises.**

(2) trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

g. **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, the loading or unloading of watercraft:

(1) with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured**.

(2) powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured**. But, outboard motors of more than 25 total horsepower are covered for the policy period if:

  (a) you acquire them prior to the policy period and:

    (i) you declare them at policy inception; or

    (ii) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

  (b) you acquire them during the policy period.

(3) that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured**.

This exclusion does not apply while the watercraft is on the **residence premises.**

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

h. **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft:

HO-A

Page 15

24

ALL-TOL 000038

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to __bodily injury__ to a __residence employee__ arising out of and in the course of the __residence employee's__ employment by an __insured__.

i. __bodily injury__ or __property damage__ arising out of:

    (1) the entrustment by an __insured__ to any person; or

    (2) the negligent supervision by an __insured__ of any person;

    with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to __bodily injury__ to a __residence employee__ arising out of and in the course of the __residence employee's__ employment by an __insured__.

j. __bodily injury__ or __property damage__ caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k. __bodily injury__ or __property damage__ arising out of the transmission of sickness or disease by an __insured__ through sexual contact.

l. __bodily injury__ to any person eligible to receive any benefits voluntarily provided or required to be provided by an __insured__

under any workers' compensation law or occupational disease law.

2. **Coverage C (Personal Liability)** does not apply to:

a. liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

    (1) that directly relate to the ownership, maintenance or use of an __insured location;__ or

    (2) where the liability of others is assumed by an __insured;__

      unless excluded elsewhere in this policy.

b. __property damage__ to property owned by an __insured.__

c. __property damage__ to property rented to, occupied or used by or in the care of an __insured.__

This exclusion does not apply to __property damage__ caused by fire, smoke or explosion.

d. __bodily injury__ or __property damage__ for which an __insured__ under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada.

e. __bodily injury__ to you or an __insured__ within the meaning of part a. or part b. of __insured__ as defined.

HO-A

Page 16

PROP *11000420695116570015931207



ALL-TOL 000039

25

3. Coverage D (Medical Payments to Others) does not apply to:

   a. **bodily injury** to a **residence employee** if the **bodily injury**:

     (1) occurs off the **insured location**; and

     (2) does not arise out of or in the course of the **residence employee's** employment by an **insured**.

   b. **bodily injury** to any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location.**

## SECTION II — ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability.

1. **Claim Expenses. We pay:**

   a. expenses we incur and costs taxed against an **insured** in any suit we defend.

   b. premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

   c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

   d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **Imperative Medical Expenses to Others.** We pay expenses incurred by an **insured** for immediate medical and surgical relief to others, if imperative at the time of the accident.

3. **Damage to Property of Others:** We pay replacement cost up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We do not pay for **property damage**:

   a. caused intentionally by an **insured** who is 13 years of age or older.

   b. to property owned by an **insured**.

   c. to property owned by or rented to a tenant of an **insured** or a resident in your household.

   d. arising out of:

     (1) a **business** engaged in by an **insured**.

     (2) any act or omission in connection with the premises owned, rented or controlled by an **insured**, other than the **insured location**.

     (3) the ownership, maintenance, use, loading or unloading of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

    This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

ALL-TOL 000040

## SECTION II — CONDITIONS

1. **Limit of Liability.** The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one **occurrence**. This limit is the same regardless of the number of **insureds**, claims made or persons injured.

   The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D (Medical Payments to Others) for all medical expenses payable for **bodily injury** to one person as the result of one accident. The total limit of our liability for all expenses payable to two or more persons injured in one accident is $25,000.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition will not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** will perform the following duties that apply or will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) the identity of the policy and **insured**.

      (2) reasonable available information on the, time, place and circumstances of the accident or **occurrence**.

      (3) names and addresses of any claimants and witnesses.

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**.

   c. At our request, help us:
      (1) to make settlement.

      (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**.

      (3) with the conduct of suit, including attending hearings and trials.

      (4) to secure evidence and obtain the attendance of witnesses.

   d. The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expenses other than for immediate medical and surgical relief to others at the time of the **bodily injury**.

4. **Duties of an Injured Person — Coverage D (Medical Payments to Others).**

   The injured person or someone acting for the injured person will:

   a. give us written proof of claim, under oath if required, as soon as is practical.

   b. authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor or our choice when and as often as we reasonably require.

5. **Payment of Claim — Coverage D (Medical Payments to Others).** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

HO-A

PROP *110094206551657001593121*



ALL-TOL 000041

27

No one will have the right to join us as a party to any action against an **insured**. Also, no action with respect to Coverage C (Personal Liability) can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement.

Under Coverage D (Medical Payments to Others), no action can be brought until 30 days after the required proofs of claim have been filed with us.

7. **Bankruptcy of the Insured.** Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of our obligations under this policy.

8. **Other Insurance — Section II.** If the **insured** has other insurance under Coverage C (Personal Liability), we will not be liable for a greater proportion of a loss than the limit of liability shown on the declarations page bears to the total limit of all valid and collectible insurance against such loss.

However, with respect to loss arising out of the ownership, maintenance, operation, use, loading

or unloading of:

a.   any motor vehicle or recreational vehicle at the **residence premises;** or

b.   watercraft,

this policy will not apply to the extent that any valid and collectible insurance is available to the **insured.**

9.   **Notice of Settlement of Liability Claim.**

a.   We will notify the **insured** in writing of any initial offer to compromise or settle a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 10 days after the date the offer is made.

b.   We will notify the **insured** in writing of any settlement of a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 30 days after the date of the settlement.

## SECTION I AND II — CONDITIONS

1.   **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II which occurs during the policy period stated on the declarations page.

2.   **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

3.   **Liberalization Clause.** If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy

without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

4.   **Waiver or Change of Policy Provisions.** Changes in this policy may be made and perils added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the provision to be waived. Our request for an appraisal or examination will not waive any of our rights.

HO-A

Page 19

28

ALL-TOL 000042

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b. We may cancel this policy for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

      (1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason. The effective date of cancellation cannot be before:

         (a) the 10th day after we mail notice if we cancel for non-payment of premium.

         (b) the 30th day after we mail notice if we cancel for any other reason.

      (2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

         (a) you do not pay the premium or any portion of the premium when due.

         (b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

         (c) you submit a fraudulent claim.

         (d) there is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

   The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation will state the reason for cancellation.

   c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

   d. We may not cancel this policy solely because you are an elected official.

6. **Refusal to Renew.**

   a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

   b. We may not refuse to renew this policy solely because you are an elected official.

   c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

   If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

   A claim does not include a claim that is filed but is not paid or payable under the policy.

   d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named on the declarations page, written notice of our refusal to renew not later than the 30th day

HO-A

PROP *1100042090516570015593122*



29

ALL-TOL 000043

before the date on which this policy expires.
Proof of mailing will be sufficient proof of
notice. If we fail to give you proper notice of
our decision not to renew, you may require
us to renew the policy.

7. **Assignment.** Assignment of this policy will not
be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing
before a loss, all rights of recovery against any
person. If not waived, we may require an
assignment of rights of recovery for a loss to the
extent that payment is made by us.

If an assignment is sought, an **insured** must sign
and deliver all related papers and cooperate with
us.

Subrogation does not apply under Section II to
Medical Payments to Others or Damage to
Property of Others.

9. **Death.** If the named insured dies, we insure:

   a. the named insured's spouse, if a resident of
   the same household at the time of death.

   b. the legal representative of the deceased.
   However, if this legal representative was not
   an **insured** at the time of death of the
   named insured, this policy will apply to such
   legal representative only with respect to the
   premises of the original named insured.

   c. any person who is an **insured** at the time of
   such death, while a resident of said
   premises.

*30*

ALL-TOL 000044

**Allstate Texas Lloyd's**
A Lloyd's Company

---

Policy Number: 9 44 209277 05/22     Your Agent:    Lezlee Liljenberg  (817) 794-5887
For Premium Period Effective: **May 22, 2006**          **Allstate Classic**

---

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

## ADDITIONAL EXTENDED COVERAGE WITH LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION (Form HO-A Only) — HO-470T (02-02)

### DEFINITIONS

The following definition is added:

10.   **"Fungi"**

    a.   *"Fungi"* means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by **fungi**.

    b.   Under Section II, this does not include any **fungi** that are, are on, or are contained in, a product or goods intended for consumption.

### SECTION I — PROPERTY COVERAGE
### EXTENSIONS OF COVERAGE

2.   **LOSS OF USE** is amended as follows:

    The total limit of liability for all loss of use of 10% of the Coverage A (Dwelling) limit of liability is changed to 20% of the Coverage A (Dwelling) limit of liability.

    This extension of coverage does not apply to additional living expense or fair rental value due to **fungi**, other microbes or rot remediation ensuing from Perils Insured Against 9., 10., 11., 12., 13., 14., 15., or 16. below.

The following Extension of Coverage is added:

8.   **LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION**

    This Extension of Coverage applies only if a limit of liability is shown for LIMITED **FUNGI**, OTHER MICROBES OR ROT REMEDIATION in the Declarations.

    a.   If a loss caused by Perils Insured Against 9., 10., 11., 12., 13., 14., 15., or 16. below results in **fungi**, other microbes or rot, we will pay for:

Page 1

PROF *11000470605185700159312S*



31

## Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22    Your Agent: **Lezlee Liljenberg (817) 794-5887**
For Premium Period Effective: May 22, 2006    **Allstate Classic**

      (1)  remediation of the <u>fungi</u>, other microbes or rot. This includes payment for the reasonable and necessary cost to:

          (a)  remove the <u>fungi</u>, other microbes or rot from covered property or to repair, restore or replace that property; and

          (b)  tear out and replace any part of the building as needed to gain access to the <u>fungi</u>, other microbes or rot;

      (2)  any reasonable and necessary increase in living expense you incur so that your household can maintain its normal standard of living or loss of fair rental value if the <u>fungi</u>, other microbes or rot makes the <u>residence premises</u> wholly or partially untenantable; and

      (3)  any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the <u>fungi</u>, other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

  b.  We will pay under this Extension of Coverage only if:

      (1)  the covered loss occurs during the policy period;

      (2)  all reasonable means were used to save and preserve the property at the time of and after the covered loss; and

      (3)  we receive prompt notice of the covered cause of loss that is alleged to have resulted in <u>fungi</u>, other microbes or rot.

  c.  The most we will pay under this Extension of Coverage is the limit of liability shown in the Declarations for LIMITED <u>FUNGI</u>, OTHER MICROBES OR ROT REMEDIATION. This is the most we will pay for the total of all loss or costs regardless of the:

      (1)  Number of locations or items of property insured under this policy; or

      (2)  Number of losses or claims made.

  d.  This is not additional insurance and does not increase the limit of liability that applies to the damaged property.

## SECTION I—PERILS INSURED AGAINST

The following perils are added:

9.    **Sudden and accidental tearing apart, cracking, burning or bulging of steam or hot water heating or storage systems in a building.** The loss must be caused by pressure of water or steam in the system or the deficiency of water or steam in the system.

Page 2

# Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22     Your Agent:   Lezlee Lljenberg (817) 794-5867
For Premium Period Effective: May 22, 2006       Allstate Classic

10. **Vehicles** owned or operated by an **Insured** or by a tenant of the **residence premises**. Loss must result from actual physical contact of a vehicle with covered property or with the building containing the covered property.

11. **Fall of trees or limbs,** including felling, topping or trimming.

12. **Objects falling** from the weight of ice, snow or sleet.

13. **Collapse**

   a.   Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

   b.   A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   c.   A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

   d.   A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

   We do not cover loss resulting from subsidence.

14. **Breakage of glass** which is part of the building including glass in storm doors and storm windows.

15. **Sudden and Accidental Discharge or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

   a.   We cover the cost of tearing out and replacing that part of the dwelling structure, excluding the slab or foundation, necessary to repair or replace the system or appliance. But this coverage does not include loss to the system or appliance from which the water or steam escaped.

   b.   We do not cover sudden and accidental discharge, or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance that is either below the surface of the ground or is within or below the slab or foundation of the dwelling.

   c.   We do not cover loss caused by constant or repeated seepage or leakage of water or steam that occurs over a period of 14 days or more.

   d.   We do not cover loss caused by or resulting from freezing except as provided in Peril Insured Against 16. Freezing.

Page 3

PROP *11000420905165700156212X*

*33*

ALL-TOL 000047

# Allstate Texas Lloyd's
A Lloyd's Company

---

Policy Number: 9 44 209277 05/22    Your Agent: **Lezlee Liljenberg (817) 794-5887**
For Premium Period Effective: **May 22, 2006**    **Allstate Classic**

    e.   In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

16.    Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    a.   This peril does not include a loss caused by or resulting from freezing if you have not used reasonable care to:

        (1)  Maintain heat in the building; or

        (2)  Shut off the water supply and drain all systems and appliances of water.

        However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

    b.   In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

## SECTION I — EXCLUSIONS

Section I — Exclusions are deleted and replaced by the following:

A.    The following exclusions apply to loss to property described in Coverages A and B. However, ensuing loss not excluded by any other provision in this policy is covered.

    1.   We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

    2.   We do not cover loss to outdoor equipment, fences, driveways, walks, lawns, trees, shrubs and plants or retaining walls and bulkheads not part of the building.

        This exclusion applies only to perils 3., 10., 11., 12. and 13.

B.    We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    1.   **Earth Movement.**

        Earth movement means:

        a.   Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

Page 4

*34*

ALL-TOL 000048

**Allstate Texas Lloyd's**
A Lloyd's Company

Policy Number: 9 44 209277 05/22     Your Agent:   **Lezlee Liljenberg (817) 794-5887**
For Premium Period Effective: **May 22, 2006**     . **Allstate Classic**

b.  Landslide, mudslide, or mudflow;

c.  Subsidence;

d.  Sinkhole; or

e.  Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature or any other cause.

This exclusion does not apply to any ensuing direct loss by fire, explosion or theft resulting from earth movement.

2.  **Water Damage.**

Water Damage means:

a.  Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b.  Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c.  Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature or any other cause.

This exclusion does not apply to any ensuing direct loss by fire, explosion or theft resulting from water damage.

3.  **Building Laws.**

Building Laws mean any ordinance or law regulating the construction, repair or demolition of a building or structure.

**"Building Laws"** exclusion is modified to provide coverage only to the extent described under Perils Insured Against.

a.  Coverage Provided.

You may use up to $5,000 (at no additional premium) for the increased costs that you incur due to the enforcement of any ordinance or law, which requires or regulates:

Page 5

PROP *T1000420045165706I593125*

*35*

ALL-TOL 000049

# Allstate Texas Lloyd's
A Lloyd's Company

---

Policy Number: 9 44 209277 05/22     Your Agent:   Lezlee Liljenberg (817) 794-5887
For Premium Period Effective: May 22, 2006     Allstate Classic

    (1)  the construction, demolition or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    (2)  the demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

    (3)  the remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

You may use all or part of this coverage to pay for the increased costs you incur to remove debris resulting from the construction, repair or replacement of property as stated in a. above.

This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

b.   Building Ordinance or Law Coverage Limitations.

We will not pay for the increased cost of construction:

    (1)  if the building or structure is not rebuilt or repaired;

    (2)  if the rebuilt or repaired building or structure is not intended for the same type occupancy as the current building or structure;

    (3)  until the building or structure is actually repaired or rebuilt at the same premises; or

    (4)  unless the rebuilding or repairs are made as soon as reasonably possible after the loss or damage, not to exceed 365 days after loss unless you have requested in writing that this time limit be extended for an additional 180 days.

c.   We do not cover:

    (1)  the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    (2)  the costs to comply with any ordinance or law which requires any **Insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess the affects of, pollutants on any covered building or other structure.

Page 6

## 36

ALL-TOL 000050

## Allstate Texas Lloyd's
A Lloyd's Company

---

Policy Number: 9 44 209277 05/22     Your Agent:   Lezlee Liljenberg (817) 794-5887
For Premium Period Effective: May 22, 2006     Allstate Classic

---

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

d.   If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

4.   **Fungi, Other Microbes or Rot.**

**Fungi,** other microbes or rot means any loss or cost resulting from, arising out of, caused by, consisting of, or related to, **fungi,** other microbes or rot. This exclusion does not apply to **fungi,** other microbes or rot remediation costs:

a.   that may be afforded under Extension of Coverage B.

b.   that ensue from one or more perils numbered 1. through 8. in this HO-A policy.

5.   **Governmental Action.**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A or B by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

6.   **War.**

War includes the following and any consequence of any of the following:

a.   Undeclared war, civil war, insurrection, rebellion or revolution;

b.   Warlike act by a military force or military personnel; or

c.   Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7.   **Nuclear Damage.**

Nuclear damage means loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

Page 7

PROP *11000420665165700159312G*



ALL-TOL 000051

# Allstate Texas Lloyd's
A Lloyd's Company

---

Policy Number: 9 44 209277 05/22     Your Agent:   **Lezlee Liljenberg   (817) 794-5887**
For Premium Period Effective: **May 22, 2006**     **Allstate Classic**

---

8. **Settling, Cracking, Bulging, Shrinkage or Expansion of Specific Property**

   Settling, Cracking, Bulging, Shrinkage or Expansion of Specific Property means any loss arising out of, caused by, consisting of or related to settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceiling, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools, regardless of whether such loss ensues from any loss, including a loss involving water or water damage which is covered under this policy. However, settling, cracking, bulging, shrinkage, or expansion as a direct result of collapse of a building is covered.

## SECTION II—EXCLUSIONS

The following exclusion is added under item 1. and applies to **Coverage C (Personal Liability) and Coverage D (Medical Payments To Others):**

m.     **bodily injury** or **property damage** whether directly or indirectly arising out of, consisting of, caused by, contributed to, aggravated by or resulting from **fungi**, other microbes or rot. This includes:

   (1) the cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of **fungi**, other microbes or rot;

   (2) any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with **bodily injury** or **property damage** whether directly or indirectly arising out of, consisting of, caused by, contributed to, aggravated by or resulting from **fungi**, other microbes or rot, or the activities described in m.(1) above;

   (3) any obligation to share with or repay another who must pay damages because of **bodily injury** or **property** damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the **bodily injury** or **property damage**; and

   (4) liability imposed upon any **insured** by any governmental authority for **bodily injury** or **property damage** whether directly or indirectly arising out of, consisting of, caused by, contributed to, aggravated by or resulting from **fungi**, other microbes or rot.

All other provisions of this policy apply.

*38*

ALL-TOL 000052

**Allstate Texas Lloyd's**
A Lloyd's Company

---

Policy Number: 9 44 209277 05/22      Your Agent:   **Lezlee Liljenberg (817) 794-5887**
For Premium Period Effective: **May 22, 2006**      **Allstate Classic**

---

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

## Texas Replacement Cost For Personal Property
## (For use with Form HO-A) — AP1205

COVERAGE B (PERSONAL PROPERTY)

Our limit of liability and payment for covered loss to:

1.  personal property; and

2.  wall-to-wall carpeting and cloth awning;

is extended to include Replacement Cost. Replacement Cost means there will not be a deduction for depreciation. Payment will not exceed the smallest of the following:

   a.  the Coverage B (Personal Property) limit of liability;
   b.  the replacement cost at the time of loss;
   c.  for property that is repairable, the cost of repair with material of like kind and quality with no deduction for depreciation; or
   d.  the interest of the insured.

We do not pay replacement cost for:

   a.  property which cannot be replaced.
   b.  property not maintained in good or workable condition.
   c.  property that is either obsolete or useless to the insured at the time of loss.
   d.  watercraft including outboard motors for any replacement cost in excess of $2,500.

      We will pay replacement cost of watercraft including outboard motors up to a limit of $2,500.

   e.  Property that is not repaired or replaced.

Loss Settlement:

   a.  We will pay you:

      (1)  the replacement cost of your damaged property up to $1,500; and

Page 1

PROP *110004200051057001593122*

ALL-TOL 000053

# Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22      Your Agent:    Lezlaa Liljenberg  (817) 794-5887
For Premium Period Effective: May 22, 2006          Allstate Classic

    (2)  the actual cash value of your remaining damaged property

       within 5 business days after we notify you that we will pay the claim.

       If you repair or replace the damaged property, you may make claim for reimbursement on a replacement cost basis for the replacement cost of your property exceeding $1,500. You must repair, restore or replace the property within 365 days after the loss. Reimbursement will be made within 5 business days after we receive proof that the property has been repaired, restored or replaced.

  b.  In lieu of (a.) above, we may offer and you may accept or reject our offer to provide a replacement item of like kind and quality for your damaged property.

All other policy terms and conditions apply.

Page 2

40

ALL-TOL 000054

**Allstate Texas Lloyd's**
A Lloyd's Company

Policy Number: 9 44 209277 05/22    Your Agent:   Lezlee Liljenberg (817) 794-5887
For Premium Period Effective: May 22, 2006    Allstate Classic

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Replacement Cost Coverage A — Dwelling
## (For use with Form HO-A) — AP1206

### CONDITIONS

In the condition **Duties After Loss**, Item A. **Your Duties After Loss** is replaced by the following:

3. **Duties After Loss.**

  a. **Your Duties After Loss.** In case of loss to covered property caused by a **Peril Insured Against**, you must:

    (1)  give prompt written notice to us of the facts relating to the claim.

    (2)  notify the police in case of loss by theft.

    (3)  (a)  protect the property from further damage.

      (b)  make reasonable and necessary repairs to protect the property.

      (c)  keep an accurate record of repair expenses.

    (4)  furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

    (5)  as often as we reasonably require:

      (a)  provide us access to the damaged property.

      (b)  provide us with pertinent records and documents we request and permit us to make copies.

      (c)  submit to examination under oath and sign and swear to it.

    (6)  send to us, if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss not later than the

Page 1

PROP *190004206051657001590128*



41

ALL-TOL 000055

# Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22     Your Agent:   Lezlee Liljenberg  (817) 794-5887
For Premium Period Effective: May 22, 2006          Allstate Classic

15th business day after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

(a)  This proof of loss shall state, to the best of your knowledge and belief:

  (i)   the time and cause of loss;

  (ii)  the interest of the insured and all others in the property involved including all liens on the property.

  (iii) other insurance which may cover the loss; and

  (iv)  the actual cash value of each item of property and the amount of loss to each item.

The Loss Settlement Condition is replaced by the following:

4.  **Loss Settlement.** Covered property losses are settled as follows:

  a.  Our limit of liability and payment for covered losses to personal property, wall to wall carpeting, cloth awnings and fences will not exceed the smallest of the following:

    (1)  the actual cash value at the time of loss determined with proper deduction for depreciation;

    (2)  the cost to repair or replace the damaged property with material of like kind and quality, with proper deduction for depreciation; or

    (3)  the specified limit of liability of the policy.

  b.  Our limit of liability for covered losses to dwelling and other structure(s) under Coverage A (Dwelling), except wall to wall carpeting, cloth awning and fences, will be at replacement cost settlement subject to the following:

    (1)  If, at the time of loss, the Coverage A (Dwelling) limit of liability is 80% or more of the full replacement cost of the dwelling, we will pay the repair or replacement cost of the damaged building structure(s), without deduction for depreciation.

    (2)  If, at the time of loss, the Coverage A (Dwelling) limit of liability is less than 80% of the full replacement cost of the dwelling, we will pay only a proportionate share of the full replacement cost of the damaged building structure(s). Our share is equal to:

      Replacement Cost of the Loss
                          X
      Coverage A (Dwelling) Limit of Liability
      80% of Replacement Cost of the Dwelling

Page 2

42

ALL-TOL 000056

# Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22     Your Agent:   Lezlee Liljenberg  (817) 794-5887
For Premium Period Effective: May 22, 2006     Allstate Classic

(3)  If, at the time of loss, the actual cash value of the damaged structure(s) is greater than the replacement cost determined under (1) or (2) above, we will pay the actual cash value up to the applicable limit of liability.

In determining the amount of insurance required to equal 80% of the full replacement cost of the dwelling, do not include the value of excavations, underground pipes, and wiring and foundations which are below the surface of the ground.

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our payment will not exceed the smallest of the following.

(i)  the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

(ii)  the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises, or

(iii)  the amount actually and necessarily spent to repair or replace the damaged building structure(s)

The Appraisal Condition is replaced by the following:

7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

a.  the full replacement cost of the dwelling.

b.  the full replacement cost of any other building upon which loss is claimed.

c.  the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

All other policy provisions apply.

Page 3

PROP *11000420696165700159312S*



ALL-TOL 000057

43

**Allstate Texas Lloyd's**
A Lloyd's Company

Policy Number: 9 44 209277 05/22     Your Agent:   Lezlee Liljenberg (817) 794-5887
For Premium Period Effective: May 22, 2006      Allstate Classic

## RESIDENCE GLASS COVERAGE

## ENDORSEMENT NO. HO-105
### Effective July 8, 1992

The terms and conditions of this endorsement apply only to the property described in this endorsement. None of the terms, conditions and limits of liability stated in the policy apply to this endorsement except the Waiver or Change of Policy Provisions, Cancellation, Assignment, Subrogation and Definitions.

This insurance applies to: (check the box(es) that applies)

[x]   Unscheduled Glass;

[ ]   Scheduled Glass described in the schedule below;

while in or on the dwelling or other structures on the <u>residence premises</u>.

1.   **Residence Glass Coverage.** We will pay for damages to residence glass caused by breakage of or by chemicals applied to such glass if:

   a.   described in the schedule below.

   b.   permanently attached to the dwelling or other structures on the <u>residence premises</u>, including storm windows and doors not permanently attached.

   We will also pay for making temporary repairs, resulting damage to encasing frames, and removing or replacing obstructions because of a covered loss to glass.

2.   **Exclusions.** We will not pay for loss or damage caused by:

   a.   fire.

   b.   war. This includes undeclared war, civil war, insurrection, rebellion or revolution or any consequence of these.

   c.   nuclear reaction, nuclear radiation or radioactive contamination or any consequence of these.

Prescribed by the State Board of Insurance                                    Page 1
Endorsement No. HO-105 — Residence Glass Coverage — Effective July 8, 1992

44

ALL-TOL 000058

# Allstate Texas Lloyd's
A Lloyd's Company

---

Policy Number: **9 44 209277 05/22**      Your Agent:   **Lezlee Liljenberg  (817) 794-5887**
For Premium Period Effective: **May 22, 2006**          **Allstate Classic**

---

3. **Loss Settlement.**

   a.   Unscheduled Residence Glass. We will not pay more than:

   (1)  $100 for all damage in any one occurrence for each of the following objects:

       (a)  multiple plate insulating unit;
       (b)  radiant heating panels;
       (c)  conservatory or greenhouse glass;
       (d)  chandeliers or light fixtures;
       (e)  jalousies, louvers or shutters;
       (f)   venetian type doors or windows;
       (g)  stained or leaded glass; or
       (h)  glass bricks, shingles or other structural glass.

   (2)  $100 for any one pane or plate of glass comprising any other object not listed in 3.a.(1) above.

   b.   Scheduled Residence Glass. We will not pay more than the smallest of the following:

   (1)  actual cash value of the property at the time of the loss;

   (2)  the cost to repair the damaged property with like kind and quality or replace the glass with
          safety glazing material when required by ordinance or law; or

   (3)  the limit of liability stated in the schedule below.

   c.   Pair or Set. If loss to an article which is part of a pair or set occurs, we will measure that loss at a
          reasonable and fair proportion of the total value of the pair or set giving consideration to the
          importance of the article.

          We will not pay a total loss to the pair or set when the loss is to an article that is part of a pair or set.

   d.   We may pay for the loss in money or may repair or replace the property. Any property we pay for or
          replace will become our property.

---

Prescribed by the State Board of Insurance
Endorsement No. HO-105 — Residence Glass Coverage — Effective July 8, 1992                    Page 2

PROP *110004206051657001590130*



45

ALL-TOL 000059

# Allstate Texas Lloyd's
A Lloyd's Company

Policy Number: 9 44 209277 05/22    Your Agent:    **Lezlee Liljenberg (817) 794-5887**
For Premium Period Effective: **May 22, 2006**        **Allstate Classic**

## SCHEDULED RESIDENCE GLASS

| Number in Plates | Length in Inches | Width in Inches | Description of Glass, Lettering and Ornamentation; Position in Building. The glass in plain flat glass with all edges set in frames, unless otherwise stated herein. | Specific Limit (if any) | Premium |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Total Scheduled Glass Premium $

4. **Your Duties After Loss.** In case of loss to covered property, you must:

   a. give prompt written notice to us.

   b. file a proof of loss at our request, on forms that we provide. If we request a proof of loss, we must request it not later than the 15th day after we receive your written notice. We may require this filing of proof of loss to be under oath.

5. **Action Against Us.** There can be no action against us unless you have complied with all the terms of this policy.

6. **Other Insurance.** If a loss covered under this endorsement is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this endorsement bears to the total amount of valid and collectible insurance covering the loss.

Prescribed by the State Board of Insurance                    **Page 3**
Endorsement No. HO-105 — Residence Glass Coverage —— Effective July 8, 1992

46

ALL-TOL 000060

**Allstate Texas Lloyd's**
A Lloyd's Company

Policy Number: 9 44 209277 05/22     Your Agent:   Lazlee Liljenberg  (817) 794-5887
For Premium Period Effective: May 22, 2006        Allstate Classic

## CANCELLATION

For use with TDI forms HO-A, HO-B, HO-C,
Tenant Form B, Tenant Form C, Condo Form B, Condo Form C
Endorsement No. HO—712
Effective: September 5, 2003

Section 5 of SECTION I—II—CONDITIONS contained in the policy is amended to read as follows:

5.  **Cancellation**
    a.  You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.
    b.  If this policy has been in effect for less than 60 days and is not a renewal policy we may cancel this policy if:
        (1)  we identify a condition that:
            (a)  creates an increased risk of hazard;
            (b)  was not disclosed in the application for insurance coverage; and
            (c)  is not the subject of a prior claim; or
        (2)  before the effective date of the policy, we have not accepted a copy of a required inspection report that:
            (a)  was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and
            (b)  is dated not earlier than the 90th day before the effective date of the policy.
        An inspection report is deemed accepted, unless we reject it before the 11th day after the date we receive it.
    c.  We may also cancel this policy at any time for any of the following reasons:
        (1)  you do not pay the premium or any portion of the premium when due.
        (2)  the Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.
        (3)  you submit a fraudulent claim.
        (4)  there is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.
    d.  The effective date of cancellation cannot be before the 10th day after we mail the notice if we cancel for any of the reasons in c. or the 30th day after we mail notice if we cancel for any other reason.  Our notice of cancellation must state the reason for cancellation.
    e.  If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.
    f.  We may not cancel this policy solely because you are an elected official.

Copyright - ICT Services, Inc. - 2003

PRDP *1100042069516570015693131*

47

ALL-TOL 000061

# EXHIBIT 2

48



**Allstate.**
You're in good hands.

NCT/Texas CAT Team
8700 FREEPORT PARKWAY
IRVING TX 75063

CHRIS & LAURA TOLAR
1621 HEARTHSTONE DR
PLANO TX 75023-7410

October 03, 2007

INSURED: CHRIS TOLAR
DATE OF LOSS: April 13, 2007
CLAIM NUMBER: 0104861380

PHONE NUMBER: 800-366-2958
FAX NUMBER: 866-655-4774
OFFICE HOURS:
Mon - Fri 7:00am - 7:00pm

DATE OF SETTLEMENT: October 02, 2007

Dear CHRIS & LAURA TOLAR,

Thank you for allowing us to spend time with you regarding your recent claim. When replacement cost coverage is afforded by your policy, the following will apply:

The following calculations summarize our settlement agreement:

| | | | |
|---|---|---|---|
| 1. | The full cost of repair or replacement is | $ | 13,738.27 |
| 2. | The recoverable depreciation is | $ | 4,387.20 |
| 3. | The non-recoverable depreciation is | $ | 0.00 |
| 4. | The actual cash value of the loss is | $ | 9,351.07 |
| 5. | Your deductible is | $ | 1650.00 |
| 6. | The actual cash value payment is | $ | 7,701.07 |

Depreciation has been deducted from the full cost of the repair or replacement to your property to determine the actual cash value.

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our payment will not exceed the smallest of the following.

(i) the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

(ii) the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises, or

(iii) the amount actually and necessarily spent to repair or replace the damaged building structure(s).

EXHIBIT "2"

49

0104861380

Should you wish to discuss any aspect of this case including this letter, please call me at the number below, and refer to our claim number.

Sincerely,

*Jannina Iglehart*

Jannina Iglehart
(800) 366-2958 Ext.66743
Allstate Texas Lloyds

50

# Estimate

Claim #    000104861380

| | |
|---|---|
| **Adjuster** | **Allstate Insurance-National Catastrophe Team** |
| Jannina Iglehart  NCT | P.O. Box 94054 |
| **Phone**   (800) 547-8676 | Palatine, IL 60094 |
| **Fax** | Phone (800) 547-8676   Fax (888) 859-3946 |

October 3, 2007

**Insured Name**  TOLAR, CHRIS
**Loss Address**
**Phone Number** (214) 476-8652
**Other Phone**
**Ins Company**  ALLSTATE TEXAS LLOYDS COMPANY

**Policy #**   000944209277
**Ins Claim #** 000104861380

**Catastrophe #** 0413200708
**Date of Loss**  4/13/2007

---

## AA - Dwelling (ROOF)

**Roof**
3,451 sf Roof

**Main Area**   58' x 22' 8" (2)    29' 4" x 10' 6" (2)    25' 8" x 4' (2)

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Remove Fiberglass Lam, Shingle, 30 YR. | 34.51 SQ @ $14.99 ᵃ | $517.30 | $0.00 | $517.30 |
| Remove Wood Shakes | 34.51 SQ @ $27.15 ᵃ | $936.95 | $0.00 | $936.95 |
| Replace Sheathing, Roof, Plywood, 1/2" | 3623.55 SF @ $0.35 ᵇ | $1,268.24 Material | | |
| | 3451 SF @ $0.21 | $724.71 Labor | | |
| | | $1,992.95 | $434.83 | $1,558.12 |
| Replace Fiberglass Lam, Shingle, 30 YR. | 37.33 SQ @ $46.21 ᵇ | $1,725.02 Material | | |
| | 34.67 SQ @ $32.79 | $1,136.83 Labor | | |
| | | $2,861.85 | $1,144.74 | $1,717.11 |
| Replace Felt, #15, 15 LB | 34.51 SQ @ $9.46 ᵇ | $326.46 | $244.85 | $81.61 |
| Remove Ridge Shingles, Fiberglass | 509.49 LF @ $0.31 ᵃ | $157.94 | $0.00 | $157.94 |
| Replace Ridge Shingles, Fiberglass | 509.49 LF @ $1.34 ᵃ | $682.72 | $512.04 | $170.68 |

THE HOME HAS TRIPLE RIDGE.

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Remove Roof Vent, Turbine, Medium | 2 EA @ $3.01 ᵃ | $6.02 | $0.00 | $6.02 |
| Replace Roof Vent, Turbine, Medium | 2 EA @ $91.53 ᵃ | $183.06 | $87.87 | $95.19 |
| Remove Vent, Dryer/Exhaust, Aluminum | 6 EA @ $4.16 ᵃ | $24.96 | $0.00 | $24.96 |
| Replace Vent, Dryer/Exhaust, Aluminum | 6 EA @ $12.90 ᵇ | $77.40 | $37.15 | $40.25 |
| Remove Roof Vent, Box, Aluminum, 8"x8" | 3 EA @ $3.12 ᵃ | $9.36 | $0.00 | $9.36 |
| Replace Roof Vent, Box, Aluminum, 8"x8" | 3 EA @ $21.34 ᵃ | $64.02 | $30.73 | $33.29 |
| Remove Vent Cap, Furnace | 2 EA @ $3.12 ᵃ | $6.24 | $0.00 | $6.24 |
| Replace Vent Cap, Furnace | 2 EA @ $44.01 ᵃ | $88.02 | $42.25 | $45.77 |
| Replace Flashing, Lead, 8", 4 lb. | 52 LF @ $6.48 ᵃ | $336.96 | $101.09 | $235.87 |

AMOUNT TO RE-FLASH AROUND THE SKYLIGHTS.
FLASHING DAMAGED BUT THE SKYLIGHTS ARE NOT
DAMAGED.

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Rem/Reset Satellite Dish | 1 EA @ $84.16 ᵃ | $84.16 | $0.00 | $84.16 |
| Special Steep Roof Charge, Roof Covering, 6/12-7/12 | 34.51 SQ @ $10.00 ᵃ* | $345.10 | $0.00 | $345.10 |

---

51

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Special Cleanup & Removal | 25.88 HR @ $16.24 ª | $420.29 | $0.00 | $420.29 |

TOTAL ALLOWANCE FOR ROOF REPLACEMENT INCLUDING OVERHEAD AND TAX (ADDED AT THE END OF THE ESTIMATE) IS $12,109.09.

| | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|
| **AA - Dwelling (ROOF) Totals** | $9,121.76 | $2,635.55 | $6,486.21 |

## AA - Dwelling (GUTTERS)

### GUTTERS

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Remove Gutter Aluminum, 6" | 146.5 LF @ $0.47 ª | $68.86 | $0.00 | $68.86 |
| Replace Gutter, Aluminum, 6" | 146.5 LF @ $4.42 ª | $647.53 | $485.65 | $161.88 |
| Remove Downspout, Aluminum, 6" | 50 LF @ $0.36 ª | $18.00 | $0.00 | $18.00 |
| Replace Downspout, Aluminum, 6" | 50 LF @ $3.25 ª | $162.50 | $108.33 | $54.17 |
| Paint Gutter/Downspout, 1 Coat | 196.5 LF @ $0.44 ª | $86.46 | $0.00 | $86.46 |
| Special Cleanup & Removal | 1.5 HR @ $16.24 ª | $24.36 | $0.00 | $24.36 |

TOTAL ALLOWANCE FOR GUTTER REPLACEMENT INCLUDING OVERHEAD AND TAX (ADDED AT THE END OF THE ESTIMATE) IS $1342.02.

| | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|
| **AA - Dwelling (GUTTERS) Totals** | $1,007.71 | $593.98 | $413.73 |

## AA - Dwelling (WINDOWS)

### WINDOWS

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Special Minimum Charge, Windows | 1 LS @ $110.24 ª | $110.24 | $0.00 | $110.24 |

THIS IS THE AMOUNT TO REMOVE AND REPLACE THE WINDOW BEADING AROUND THE FRONT WINDOWS THAT WERE DAMAGED BY HAIL.

TOTAL ALLOWANCE FOR WINDOW REPAIR INCLUDING OVERHEAD AND TAX (ADDED AT THE END OF THE ESTIMATE) IS $143.45

| | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|
| **AA - Dwelling (WINDOWS) Totals** | $110.24 | $0.00 | $110.24 |

## AA - Dwelling (CHIMMNEY)

### CHIMNEY
49 sf Floor

Rectangle   18 sf Floor

52

Parallelogram   8 sf Floor
                23 sf Floor

| | | Repl. Cost | Depr. | ACV OP RD |
|---|---|---|---|---|
| Remove Wood Shakes | 0.49 SQ @ $27.15 ª | $13.30 | $0.00 | $13.30 |
| Replace Wood Shakes | 0.53 SQ @ $117.12 ª | $62.07 Material | | |
| | 0.49 SQ @ $57.14 | $28.00 Labor | | |
| | | $90.07 | $45.03 | $45.04 |
| Special Cleanup & Removal | 0.25 HR @ $16.24 ª | $4.06 | $0.00 | $4.06 |

TOTAL ALLOWANCE FOR CHIMNEY REPAIR INCLUDING
OVERHEAD AND TAX (ADDED AT THE END OF THE
ESTIMATE) IS $143.71.

| | | Repl. Cost | Depr. | ACV |
|---|---|---|---|---|
| AA - Dwelling (CHIMMNEY) Totals | | $107.43 | $45.03 | $62.40 |

## Summary

| | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $10,347.14 | $3,274.56 | $7,072.58 |
| Contractor's Overhead & Profit (29%) | $3,000.67 | $949.62 | $2,051.05 |
| Total With Overhead & Profit | $13,347.81 | $4,224.18 | $9,123.63 |
| Sales Tax 8.25% | $390.46 | $163.02 | $227.44 |
| Total With Tax | $13,738.27 | $4,387.20 | $9,351.07 |
| Less Deductible Applied ($1,650.00 Maximum) | ($1,650.00) | | ($1,650.00) |
| Net Claim | $12,088.27 | $4,387.20 | $7,701.07 |

Items noted as such by the Price Database Legend at the bottom of this estimate were based on material pricing provided by and available at large building material suppliers in your local market. It should be noted that prices can change without notice. Allstate will honor this estimate and work with you to resolve your claim regardless of where you purchase your materials and services. If you find the cost of repairs or replacement is more than reflected in this estimate, please contact your claim adjuster at the number listed above.

PLEASE NOTE: "Actual Cash Value is defined as the amount it would take to repair or replace damage to your home less depreciation. Depreciation, when applied in this estimate, is the decrease of the property's value due to age, wear and tear (condition) or obsolescence, except where otherwise noted."

**Price Database Legend**
a = MSB Cost Data SS07A0403
b = MSB Cost Data SS07A0403 (Home Improvement Ret Material)

\* = Modified

# EXHIBIT B

54



**Texas Department of Insurance**
**General Counsel and Chief Clerk,** Mail Code 113-2A
333 Guadalupe • P. O. Box 149104, Austin, Texas 78714-9104

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF TRAVIS** | § |

The Commissioner of Insurance, as the chief administrative and executive officer and custodian of records of the Texas Department of Insurance has delegated to the undersigned the authority to certify the authenticity of documents filed with or maintained by or within the custodial authority of the Office of the Chief Clerk of the Texas Department of Insurance, excluding records relevant to an inquiry, if any, by the Texas Department of Insurance's Insurance Fraud Unit.

Therefore, I hereby certify that the attached document is a true and correct copy of the document described below. I further certify that the document described below is filed with or maintained by or within the custodial authority of the Office of the Chief Clerk of the Texas Department of Insurance.

The certified document consists of a complete copy of:

Official Commissioner's Bulletin No. B-0045-98
of the Commissioner of Insurance
of the State of Texas, dated June 12, 1998
consisting of three (3) pages;

Subject considered:

**Calculation of Actual Cash Value Under the Texas Standard
Homeowner's Policy – Form B**

This certification does not include records relevant to an inquiry, if any, by the Texas Department of Insurance's Insurance Fraud Unit which are confidential pursuant to Tex. Ins. Code art. §701.151, §5(a) and an Op. Tex. Att'y Gen. No. OR95-1536 (1995).

IN TESTIMONY WHEREOF, witness my hand and seal of office at Austin, Texas, this



_____13ᵗʰ___ day of ____February___ A.D. ___2009___

**MIKE GEESLIN**
**COMMISSIONER OF INSURANCE**

By _____
Angela Arizpe
Executive Assistant
Texas Department of Insurance

**EXHIBIT "B"**

55



**Texas Department of Insurance**
333 Guadalupe Street  P.O.Box 149104  Austin,Texas 78714-9104
512/463-6169

June 12, 1998

## COMMISSIONER'S BULLETIN NO. B-0045-98

**TO:   ALL PROPERTY AND CASUALTY INSURANCE COMPANIES**

**RE:  Calculation of Actual Cash Value Under the Texas Standard Homeowner's Policy – Form B**

The Department has learned that one or more insurers have interpreted language in the Texas Standard Homeowner's Policy – Form B to permit the deduction of contractor's overhead and profit, in addition to depreciation, from replacement cost in calculating actual cash value. This interpretation has generated two class action lawsuits and inquiries to the Department regarding the Department's position on this matter.   The insurers are interpreting the following Loss Settlement provision of the Texas Homeowners Policy – Form B:

> We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed.

The purpose of this bulletin is to state the Department's position that actual cash value of a structure under a replacement cost policy, when the insurer does not repair or replace the structure, is the replacement cost with proper deduction for depreciation. The deduction of prospective contractors' overhead and profit and sales tax in determining the actual cash value under a replacement cost policy is improper, is not a reasonable interpretation of the policy language, and is unfair to insureds.

The Department's position is based on the following:

   -- Indemnity is the basis and foundation of insurance coverage.   The objective is that the insured should neither reap economic gain nor incur a loss if adequately insured. This objective requires that the insured receive a payment equal to that of the covered loss so that the insured will be restored to the same position after the loss as before the loss. The calculation of this payment results in under-compensation if an insurer deducts prospective contractors' overhead and profit and sales tax in determining the actual cash value under a replacement cost policy.  Conversely, the inclusion of contractor's overhead and profit and sales tax on building materials does not over-compensate an insured for the amount of the loss because these items represent part of the insured's loss. Generally, the objectives of indemnity will be met if actual cash value is calculated as replacement cost with proper deduction for depreciation.  In the rare situation that defies calculation of actual value on this basis, such as cases in which the

56

structure has historical significance or the materials cannot reasonably be replaced, other factors may be considered. However, there is no situation in which the deduction from replacement cost of depreciation and contractor's overhead and profit and/or sales tax on materials will be the correct measure of the insured's loss.

   --Premiums charged must not be excessive for the risks to which they apply. Under a replacement cost policy, the liability limits of the policy and the premium paid by the insured are determined on the basis of the replacement cost of the structure. The value of contractor's overhead and profit, as well as sales tax on building materials, has been included in the limit of liability for which the insured has paid premium. If the insurer in determining actual cash value excludes costs that are included in the determination of liability limits, on which the insured's premium is based, the insurer reaps an illegal windfall because the insurer receives premium on insurable values for which loss may never be paid.

   --To deduct costs other than depreciation from the estimated replacement cost of the damaged structure is contrary to historical industry norms and practices. Historically, insurers have determined actual cash value on the basis of repair or replacement cost less depreciation. Only recently have some insurers deducted contractor's overhead and profit and sales taxes on building materials. There has been no recent change in the language in the promulgated residential property policies to support such a change in determining actual cash value.

   --The insurers' argument that the cost of contractor's overhead and profit and sales tax on building materials should be excluded from an actual cash value loss settlement because the insured has not incurred these expenses is not persuasive. Using this logic, an insured who opts not to repair or replace damaged property would not incur any of the expenses necessary to repair or replace the damaged property, including the costs of building materials, and would collect nothing under an actual cash value loss settlement. This result would be contrary to the purposes of the subject insurance policy.

The scope of this bulletin is limited to the calculation of actual cash value for dwelling coverage in replacement value policies by use of the practice described herein. This bulletin is not intended to, and does not, express any opinion of the Department as to the calculation of actual cash value in other contexts, such as personal property, or measures of the actual value of such property to the owners of such property.

The Department has concluded that an insurer providing property coverage under replacement cost residential policies that allow for the adjustment of covered losses to structures on an actual cash value basis may not calculate actual cash value on the basis of replacement cost with proper deduction for depreciation, less contractor's overhead and profit, nor may the insurer deduct sales tax on building materials. Any insurer that determines actual cash value on this basis

57

may be subject to disciplinary action for violations of the Texas Insurance Code, including unfair claims practices pursuant to Article 21.21 § 4(10)(a) and Article 21.21-2.

ELTON BOMER
COMMISSIONER OF INSURANCE

# EXHIBIT C

59

**Texas Department of Insurance**
**General Counsel and Chief Clerk,** Mail Code 113-2A
333 Guadalupe • P. O. Box 149104, Austin, Texas 78714-9104

STATE OF TEXAS                          §
                                        §
COUNTY OF TRAVIS                        §

The Commissioner of Insurance, as the chief administrative and executive officer and custodian of records of the Texas Department of Insurance has delegated to the undersigned the authority to certify the authenticity of documents filed with or maintained by or within the custodial authority of the Office of the Chief Clerk of the Texas Department of Insurance, excluding records relevant to an inquiry, if any, by the Texas Department of Insurance's Insurance Fraud Unit.

Therefore, I hereby certify that the attached document is a true and correct copy of the document described below. I further certify that the document described below is filed with or maintained by or within the custodial authority of the Office of the Chief Clerk of the Texas Department of Insurance.

The certified document consists of a complete copy of:

Official Commissioner's Bulletin No. B-0068-08
of the Commissioner of Insurance
of the State of Texas, dated September 26, 2008
consisting of two (2) pages;

Subject considered:

**Loss Settlement Calculation of Actual Cash Value under an Insurance Policy That Provides Replacement Cost Coverage**

This certification does not include records relevant to an inquiry, if any, by the Texas Department of Insurance's Insurance Fraud Unit which are confidential pursuant to Tex. Ins. Code art. §701.151, §5(a) and an Op. Tex. Att'y Gen. No. OR95-1536 (1995).

IN TESTIMONY WHEREOF, witness my hand and seal of office at Austin, Texas, this



_____13th_____ day of_____ February _____ A.D. _____2009_____

MIKE GEESLIN
COMMISSIONER OF INSURANCE

By _____
Angela Arizpe
Executive Assistant
Texas Department of Insurance

**EXHIBIT "C"**

60

**Texas Department of Insurance**

Commissioner of Insurance, Mail Code 113-1C
333 Guadalupe • P. O. Box 149104, Austin, Texas 78714-9104
512-463-6464 telephone • 512-475-2005 fax

September 26, 2008

**COMMISSIONER'S BULLETIN NO. B-0068-08**

**TO:   ALL   INSURANCE   COMPANIES,   CORPORATIONS,   EXCHANGES, MUTUALS, RECIPROCALS, ASSOCIATIONS, LLOYDS, OR OTHER INSURERS WRITING PROPERTY AND CASUALTY INSURANCE IN THE STATE OF TEXAS AND TO AGENTS AND REPRESENTATIVES AND THE PUBLIC GENERALLY**

**RE:   Loss Settlement Calculation of Actual Cash Value under an Insurance Policy That Provides Replacement Cost Coverage**

The purpose of this bulletin is to remind insurers of the position of the Texas Department of Insurance (Department) when calculating actual cash value as outlined in Commissioner's Bulletin No. B-0045-98.

The bulletin set forth the Department's position that the standard method for determining actual cash value of a structure is the replacement cost with proper deduction for depreciation.    The bulletin also stated that "the deduction of prospective contractors' overhead and profit and sales tax that determining the actual cash value under a replacement cost policy is improper, is not a reasonable interpretation of the policy language, and is unfair to insureds."  Bulletin No. B-0045-98  is  available  online  at  the  Department's  website: http://www.tdi.state.tx.us/bulletins/1998/b-0045-8.html.

The Department's position has not changed.  While individual company policy forms have been approved for use in Texas, the method set forth in Bulletin No. B-0045-98 continues to be a standard method of determining actual cash value under replacement cost policies.  Thus, the insured continues to be entitled to reasonable and necessary expenses to repair or replace the damaged property, less proper deduction for depreciation.   These expenses would include the services of a contractor.  The deduction of prospective contractors' overhead and profit and sales tax, in addition to depreciation in calculating actual cash value, is an improper claim settlement practice on policies that provide coverage on an actual cash value or replacement cost basis.

The Department expects all property and casualty insurance companies to act in good faith and use fair claim settlement practices to effectuate "fair and equitable" settlements of claims and not engage in unfair settlement practices in determining the damages for a covered loss as required under the Insurance Code §541.060 and §542.003 and Texas Administrative Code Title 28, §21.203.   However, the

61

Department will not support attempts by contractors to charge for services that were not rendered nor attempts to charge twice for the payment of overhead and profit.

Additionally, these provisions require that estimates should be reasonable and not necessarily the product of a particular style, system or vendor exclusive of other reasonable alternatives. For example, insurers should not routinely eliminate from consideration certain estimate practices, concepts and tools that may be used in estimating damages for a covered loss.

The Department will investigate allegations of unfair claim settlement practices, both in context of individual cases and in context of general business practices, and will take appropriate enforcement action when evidence of unfair claim settlement practices is apparent.

Questions regarding this bulletin may be directed to Gary Julian, Personal Lines Division, at (512) 322-2266 or gary.julian@tdi.state.tx.us.

Mike Geeslin
Commissioner of Insurance

62

# EXHIBIT D

63

STATE OF  LOUISIANA

## **AFFIDAVIT**

**BEFORE ME,** the undersigned authority, personally came and appeared:

GREG ACHEE

a person of the full age of majority and resident of and domiciled in the Parish of St. Tammany, State of Louisiana who after first being sworn did depose and state as follows:

My name is Greg Achee and this Affidavit is based on personal knowledge and all such facts are true and correct.

1.       I have been an independent insurance adjuster for approximately 20 years. Following Hurricane Katrina, I worked as catastrophe manager (CAT manager) for Brush Country Claims Co., wherein I was responsible for overseeing approximately 145 adjusters and their immediate supervisors in the handling of Hurricane Katrina claims.  As CAT manager, I managed approximately 10,000 residential claims on behalf of numerous other insurance companies who retained Brush Country Claims.  I have substantial experience in the field of insurance adjusting, and I am fully familiar with the issues of depreciation and general contractor overhead and profit. (Hereinafter "GCOP")  Attached hereto and marked as Exhibit "A" is my resume.

2.       Prior to Hurricane Katrina, I worked on behalf of Farmers Insurance as an independent adjuster and also as a claims supervisor, managing numerous residential claims in California.  Farmers' policy and practice was that general contractor overhead and profit was *not*

64

subject to depreciation. GCOP, when owed, was calculated on the full cost to repair or replace the loss, not on the depreciated amount of loss.[1]

3.     It would be incorrect to depreciate the total loss and then calculate GCOP based upon the depreciated figure, since GCOP is owed upfront in the ACV payment whether or not repairs are performed and is not subject to "withholding", (i.e. withholding GCOP would improperly require the insured to perform the repairs and thereafter make a claim under the replacement cost provisions of the policy to recover the depreciated or "withheld" amounts of GCOP).

4.     Throughout the years, Farmers issued numerous adjuster guidelines, including in Texas, stating that GCOP was not subject to depreciation, and was to be calculated based upon the total cost to repair or replace.  (Please see Exhibit B, Farmers' guideline/instructions)


April 29, 2010
DATE

_____
AFFIANT

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS _____ DAY OF
April_____, 2010.

_____
NOTARY PUBLIC

BAR/NOTARY NUMBER:_____

MY COMMISSION EXPIRES:_____

---

[1] For example, if the total cost to repair or replace was $10,000 and the depreciated amount was $8,000, the GCOP owed was $2,000.  (Calculated at 20% of $10,000)

65

# Gregory K. Achee

**PO Box 503**

**Abita Springs, LA 70420**

251-421-3907

BayouM@aol.com

**Registration**

Texas License # 00-843-042-00      Status: Good Standing

NFIP Certified  fcn# 09050002  certified for Residential, Condominiums, Mobile Homes, and All Commercial flood losses

**Experience**

2005 to Present          Independent Consultant on insurance issues

2004-2005          Brush Country Claims          Alice, Tx.

**Claims Supervisor**

- Supervise and assist independent adjusters in catastrophe losses in several states.
- Claim supervisor and file examiner for hurricanes Charley, Francis, Jeanne, Ivan, and Dennis in Florida.
- Storm Manager for hurricanes Katrina and Rita in Louisiana. Managed 8 supervisors and 146 adjusters while dealing directly with major insurance carriers and the state department of insurance.

2002-2004          Continental Services          Jacksonville, Fl.

**Claims File Examiner/Supervisor**

- Review claims for major insurance carrier for mold related claims in California
- Supervise independent adjusters assigned to major insurance carrier for mold related claims.
- Assisted independent adjusters with additional training and field inspections as needed

1994–2002          Pilot Catastrophe          Mobile, Al.

**Catastrophe Claims Adjuster**

- Handled claims for homeowners and auto resulting from storm damages.
- Work office assist for major insurance companies nationwide as an independent adjuster.

<u>**EXHIBIT "A"**</u>

66

- Supervisor and Lead adjuster on several storms.
- Handled claims resulting from Hurricane, Wind/Hail, Tornado, Earthquake, Fire and Water damages.
- Worked in direct conjunction with litigation units.
- Involved in but not limited to losses for dwellings, commercial buildings, inland marine, mobile homes, auto and aircraft.
- Assisted in the training of new adjusters for both independent and major insurance companies.

| 1993–1994 | Cat Crew | Arlington, TX. |

**Independent Insurance Adjuster**
- Adjusted property claims for major insurance companies for damages resulting from disasters or catastrophes
- Handled claims resulting from Hurricane, Wind/Hail, Tornado, Earthquake, Fire and Water damages.
- Worked clean up for Hurricane Andrew claims in Florida and Louisiana.
- Worked wind and hail storms in Texas, Florida and Oklahoma.
- Involved in but not limited to losses for dwellings, commercial buildings, inland marine, mobile homes, auto and aircraft.

| 1989–1993 | Independent Adjuster | Abilene, TX. |

**Independent Insurance Adjuster**
- Adjusted daily losses and storm related losses for various insurance carriers nationwide.
- Involved in but not limited to losses for dwellings, commercial buildings, inland marine, mobile homes, auto and aircraft.
- Worked with Cook Claim Service,

**Education**

1971  Covington High School                    Covington, La.
- Member and  President of the Art club,  Secretary of Civics club, Industrial Arts club, French Club, and member of Football and Baseball team.

1971  Southeastern Louisiana University        Hammond, La.
- Business Administration

1982-84  Delgado College                       New Orleans, La
- Aircraft Technology   3.2 GPA
- Member of Student Government

1986-87  Laverne University                    Palmdale, Ca.
- National Management Association, First Line Supervisor Program, Principals of Supervision and Leadership.

67

References available upon request.

## OVERHEAD & PROFIT GUIDELINE

This is a reminder of the standard we use to determine if, and when, an amount for the services of a general contractor — referred to as general contractor's overhead and profit, or "O&P"— should be included in the estimated actual cash value (ACV) of a loss. The standard is: O&P should be included in the estimated ACV when it is "reasonably likely" that the services of a general contractor will be required to manage, supervise and coordinate the repairs.

Actual Cash Value --- ACV, when determined by deducting depreciation, includes all costs an insured is reasonably likely to incur to repair covered damage, less depreciated amounts. The two main cost categories are materials and labor; although these costs may also include sales tax, licenses or permits where applicable. ACV also includes O&P as a cost when it is reasonably likely that the services of a general contractor will be required.

O&P GUIDELINES — Many factors are considered in determining whether it is reasonably likely that the services of a general contractor will be required. Dependent on the circumstances of a particular claim these factors may include:

    (1) what different types and how many different types of repairs are necessary;

    (2) how extensive are each of the types of repairs;

    (3) whether the repairs can efficiently be handled by one person, a "handyman," one contractor, or a restoration service;

    (4) whether three or more *separate* contractors will be necessary to perform the types of repairs, or are the types of repairs usually performed by one contractor; and

    (5) whether the services of an individual will be required to manage, supervise and coordinate the repair processes, such as coordination of delivery of materials and sequencing of repair tasks.

Remember a "guideline," is a general instruction intended to streamline a particular decision process according to a set routine. By definition, a "guideline" is not mandatory; it is a "guide;" and is synonymous with a "rule of thumb."

For example, take extensive damage to a roof. Debris will have to be removed and hauled away. New wood ties, braces and other framework and decking will have to be cut and installed. New metal flashing will have to be cut, formed and installed. New waterproofing underlay and shingles will have to be installed. Flashing and new eves will have to be painted. Although the damage to the roof requires many types of repairs, all these repairs are normally performed by one contractor, a roofing contractor. Consequently, there is no reasonable need for the services of a general contractor to manage, supervise and coordinate the repairs performed by the roofing contractor.

Further, simply because a person, or a contractor employing a crew of workers, is skilled at one practical occupation—*e.g.* framing — does not mean a framing contractor is disqualified from undertaking other practical occupation(s), such as installing sheetrock or painting. In reality under the facts of a particular claim, it may reasonably be expected that one contractor will in fact demo the damaged area, repair framing, hang drywall and paint the drywall. It is not at all

uncommon in the construction industry to find individuals or contractors who are skilled at and actually perform a number of occupations.

An example of when it is reasonably likely that the services of a general contractor will be required would be an extensive kitchen fire. In that instance perhaps plumbing, electrical, flooring, framing and roofing repairs may be required. Because of the number of repairs that need to be performed, the volume of materials needed for the repairs and the need to sequence the repairs, it is likely that a general contractor will be needed to manage the overall project, supervise the work of each separate contractor and coordinate the materials delivery at the worksite and the timing of work among the contractors.

WHEN O&P IS PAYABLE — When reviewing the extent and types of repairs, if it is reasonably likely that the services of a general contractor will be necessary to manage, supervise and coordinate the repairs, then O&P is a cost of ACV, and must be included when the initial ACV payment is made. Note that the O&P is not depreciable. Further, it does not matter whether the insured states he or she will not actually be using a general contractor, whether the insured intends to make the repairs himself or herself, or whether the insured does not even intend to make the repairs - - O&P must be included in the initial ACV payment.

70