# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

CHRIS TOLAR, individually and      §
a representative of all persons      §
similarly situated,      §
     §
     **Plaintiff,**      §
     §
v.      §      CIVIL ACTION NO. 3:09-CV-0436-B
     §
ALLSTATE TEXAS LLOYD'S      §
COMPANY,      §
     §
     **Defendant.**      §

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Chris Tolar's Motion for Partial Summary Judgment (doc. 37), and Defendant Allstate Texas Lloyd's Motion for Summary Judgment or, in the Alternative, Motion to Stay Under the Doctrine of Primary Jurisdiction (doc. 40). Having considered the Motions, the Court finds that Plaintiff's Partial Motion for Summary Judgment should be **DENIED** for the reasons discussed below. Defendant's Motion for Summary Judgment or, in the Alternative, Motion to Stay Under the Doctrine of Primary Jurisdiction should be **GRANTED IN PART** and **DENIED IN PART**.

## I.

## BACKGROUND

Plaintiff Chris Tolar ("Tolar") filed this purported class action for breach of contract and unfair claim settlement practices in the 101st Judicial District, Dallas County, Texas on December 29, 2008 (doc. 1). (Pl.'s First Am. Class Action Pet. 1). Tolar's property was insured by Defendant

Allstate Texas Lloyds ("Allstate") under a homeowner's insurance policy, Policy No. 000944209277 ("Policy"). (Pl.'s First Am. Class Action Pet. 2). A storm damaged Tolar's insured property on or about April 13, 2007, and shortly thereafter Tolar filed a claim under the Policy. (Pl.'s First Am. Complaint 2.) The Policy states that Allstate "will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. . . .Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage[.]" (App. to Pl.'s Mot. Summ. J. 43.)

Allstate sent Tolar an estimate on October 3, 2007 stating that the full cost to replace the property would be $13,738.27, and that Allstate subtracted depreciation in the amount of $4,387 to reach an Actual Cash Value ("ACV") payment of $9,351.07. (App. to Pl.'s Mot. Summ J. 49.) Property value, general contractor overhead and profit ("GCOP") and sales tax were all depreciated in determining the ACV payment. (*Id.* at 53.) The estimate also states that Allstate "will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed." (*Id.*) In the estimate, ACV is defined as "the amount it would take to repair or replace damage to your home less depreciation" and depreciation is defined as "the decrease of the property's value due to age, wear and tear (condition) or obsolescence, except where otherwise noted." (*Id.* at 53.)

Tolar alleges Allstate breached its contract with Tolar and other similarly situated policyholders when it depreciated GCOP and sales tax in calculating ACV for the payment of claims. (Pl.'s First Am. Class Action Pet. 8.) Tolar also asserts an unfair claim settlement practices claim, alleging that Allstate's ACV calculation is a violation of Texas Insurance Code §541.251. (Pl.'s First Am. Class Action Pet. 3).

Tolar filed his Motion for Partial Summary Judgment on April 30, 2010, arguing that the

terms of the Policy are ambiguous and should be construed in favor of Tolar under the doctrine of *contra proferentum.* Allstate filed its own Motion for Summary Judgment or, in the Alternative, Motion to Stay Under the Doctrine of Primary Jurisdiction on April 30, 2010, arguing that Tolar failed to establish the damages element of both the breach of contract and unfair claim settlement practices claims. Allstate alternatively argues for the case to be stayed until the Texas Department of Insurance ("TDI") can issue an official opinion the heart of the dispute. Both Motions being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARDS

A. *Summary Judgment*

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the non-movant's case. *Id*; *Little,* 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

"This burden is not satisfied with 'some metaphysical doubt as to material facts,' ...by 'conclusory allegations,'...by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant.

## III.

## ANALYSIS

*A. Contract Interpretation*

Texas law governs this diversity case. *Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.*, 351 F.3d 642, 646 (5th Cir. 2003). Insurance policies are controlled by the same rules of construction that apply to contracts generally. *See Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998). The policy should be considered as a whole so as to give each part effect and avoid rendering any portion superfluous. *Balandran*, 972 S.W.2d at 74. "The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). Where, as here, the contract at issue is a standard form policy with provisions prescribed by the Texas Department of Insurance, "the actual intent of the parties is not material." *Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551-52 (Tex. 2003). Rather, the Court's role in construing a standard policy is to ascertain "the ordinary, everyday meaning of the words to the general public." *Id.* quoting *United States Ins. Co. of Waco v.*

*Boyer*, 269 S.W.2d 340, 341 (Tex. 1954).

A term is ambiguous if it is susceptible to more than one reasonable interpretation. *See Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). The determination of whether a term is ambiguous is a legal question. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992). "If a policy provision is ambiguous, the court must adopt the insured's construction of the provision, 'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" *Lubbock County Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 143 F.3d 239, 242(5th Cir. 1998) (quoting *Nat'l Hudson Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

In his Motion, Tolar argues that the contract is ambiguous because the terms "actual cash value" and "depreciation" are not defined within the Policy. (Pl.'s Br. Mot. Summ. J. 4.) Tolar further argues that because the policy provision is ambiguous, the doctrine of *contra preferentum* applies and the Court must adopt Tolar's interpretation of the contract. (*Id.*) Under Tolar's interpretation, only the value of the property itself is depreciable when calculating ACV; GCOP and sales tax are not depreciable. In its Response to Tolar's Motion, Allstate argues that the policy is unambiguous, and *contra preferentum* is thus inapplicable. (Def.'s Br. Resp. Pl.'s Mot. Summ. J. 1-2.)

Under Texas law, "undefined terms are not *per se* ambiguous terms." *Nat'l Union Fire Ins. Co. Of Pittsburgh, Pennsylvania v. McMurray*, 342 Fed. Appx. 956, 959, 2009 WL271076 at *3 (5th Cir. Aug. 27, 2009). When analyzing undefined terms, the Court must first assign the undefined term its plain, ordinary meaning. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). If the ordinary meaning of the term is susceptible to more than one reasonable interpretation, the term is

considered ambiguous. *See Nat'l Union Fire Ins. Co. Of Pittsburgh*, 342 Fed. Appx. at 959. To ascertain the plain meaning of a term, the Court looks to the term's usage under Texas law. *Tenaska Frontier Partners, Ltd. v. Sullivan*, 273 S.W.3d 734, 737 (Tex. App.–Houston [14th Dist.] 2008, no pet.).

Both parties seek to introduce evidence of bulletins issued by the TDI to support their interpretations of the policy. "Although a reviewing court may accord certain degree of deference to the Commissioner's interpretation of a particular statute or provision," TDI bulletins are not law, but rather advisory opinions subject to judicial review. *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 541 (S.D. Tex. 1999) citing *Amarillo Ind. Sch. Dist. v. Meno*, 854 S.W.2d 950, 955 n. 6 (Tex.App.–Austin 1993, writ denied). Accordingly, the Court may only look to the TDI bulletins upon a finding that the Policy is ambiguous. *See Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995) (holding that extrinsic evidence is inadmissible for contract interpretation principles absent a finding of ambiguity). For this same reason, the Court cannot consider Allstate's affidavit and expert report from former TDI Associate Commissioners absent a showing of ambiguity. (App. to Def.'s Mot. Summ. J. 58-76.)

Texas courts have defined the term "actual cash value" as "repair or replacement costs less depreciation." *Ghoman v. New Hampshire Ins. Co.*, 159 F.Supp.2d 928, 934 (N.D. Tex. 2001); *Lerer Realty Corp. v. MFB Mut. Ins. Co.*, 474 F.2d 410, 413 (5th Cir. 1973) (finding that the policy at issue contained "a clear and unambiguous undertaking to pay the insured the actual cash value of the damaged property at the time of loss, less depreciation, unless the insured was actually repaired, rebuilt or replaced within a reasonable time.") Texas law unambiguously states that "replacement costs" are subject to depreciation, and defines "replacement costs" as "any cost that an insured is

reasonably likely to incur in repairing or replacing a covered loss." *Ghoman*, 159 F.Supp.2d 928 at 934, quoting *Salesin v. State Farm Fire & Casualty Co.*, 229 Mich.App. 346, 581 N.W.2d 781, 790 (1998) (citations omitted). GCOP and sales tax are considered "replacement costs" because they are factored into policy limits and contractors' bids. *See Ghoman v. New Hampshire Ins. Co.*, 159 F.Supp.2d 928, 934 (N.D. Tex. 2001). Because GCOP, sales tax, repair costs, and property value together represent the total replacement cost value, it follows naturally that GCOP, sales tax, repair costs, and property value ought to be depreciated together to reach the ACV payment. *See, e.g., Goff v. State Farm Fl. Ins. Co.*, 999 So.2d 684, 689-90 (Fla.App. 2008) (holding that overhead and profit is depreciable because they are incorporated into the contractor's bid); *Branch v. Farmers Ins. Co. Inc.*, 55 P.3d 1023, 1027 (Okla. 2002) (holding that labor and materials costs are subject to depreciation).

It is settled law that insurers may not *deduct*, or withhold, GCOP and sales tax from an ACV payment. *Ghoman*, 159 F.Supp.2d at 936. The question to be resolved in this case is whether insurers may *depreciate* GCOP and sales tax to reach the ACV amount.

Tolar's interpretation of the Policy equates "deduction" with "depreciation," arguing that depreciation of GCOP and sales tax is improper because deduction or withholding of GCOP and sales tax is improper. (Pl.'s Br. Mot. Summ. J. 8-9.) Tolar argues that the components of ACV should be separated, allowing the insured to receive the full amount of GCOP and sales tax while depreciating only the value of the property itself. (*Id.* at 6-7.) Tolar offers no admissible evidence to support this convoluted formula. Nothing in Texas case law suggests it is improper to depreciate GCOP in calculating ACV. To the contrary, such a construction of ACV is unreasonable in light of the ordinary meaning of "replacement costs." As discussed above, "replacement costs" is defined

as a composite of all reasonably foreseeable repair or replacement costs, including labor, materials, and sales tax. *Ghoman*, 159 F.Supp.2d 928 at 934. If the TDI intended to separate GCOP and sales tax from repair costs and property value when calculating depreciation, the Policy would have expressly articulated which components of "replacement cost" were exempt from depreciation.

Tolar argues that evidence of trade usage supports his interpretation of the Policy, and submits an affidavit from Greg Achee ("Achee Affidavit"), an independent insurance adjuster formerly employed by Farmers Insurance in California. (Aff. Achee ¶ 2.) Evidence of trade usage is admissible to resolve ambiguities in a contract. *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 521. However, Allstate argues the Achee Affidavit is inadmissible because it is irrelevant, lacks foundation, and is conclusory. (Def.'s Br. Resp. Pl.'s Mot. Summ. J. 10.)

The Court agrees with Allstate and finds the Achee affidavit inadmissible for several reasons. First, extrinsic evidence cannot be introduced for the purposes of making the contract ambiguous. *See Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d at 520. As discussed above, the Policy unambiguously allows depreciation of GCOP and sales tax because they are included in "replacement costs."

Even if the Court had found the Policy to be ambiguous, the Achee Affidavit would be inadmissible. Summary judgment evidence must comport with the requirements of Federal Rule of Civil Procedure 56, which requires that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Achee is an independent claims adjuster who used to work for Farmers Insurance in California. The California legislature has expressly prohibited depreciation of GCOP and sales tax when calculating an ACV

payment. 10 CAL. CODE REGS. §2695.9(f)(1)(2010). Because Texas insurance law has no such prohibition, Achee's tesimony is irrelevant. Moreover, Achee lacks personal knowledge of and is not competent to testify on trade usage and custom in the state of Texas. Accordingly, the court **GRANTS** Allstate's Motion to Strike the Achee Affidavit.

Because Allstate offers the only reasonable interpretation of the policy, the doctrine of *contra preferentum* does not apply and Plaintiff's Partial Motion for Summary Judgment is **DENIED.**

### B. Damages

In its Motion for Summary Judgment, Allstate argues that it is entitled to judgment as a matter of law on both the breach of contract and unfair claim settlement practices claims. To prevail on a breach of contract claim under Texas law, Tolar must show "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir.2003) (citing *Renteria v. Trevino*, 79 S.W.3d 240, 242 (Tex.App.-Houston [14th Dist.] 2002, no pet.)). In Texas, "a central element to be proven in an action for the alleged breach of an insurance contract is that the insured has been damaged by the breach and the amount of damages resulting from that breach." *Block v. Employers Casualty Company*, 723 S.W.2d 173, 178 (Tex. 1986). Similarly, to prevail on an unfair practices claim under §541.060, Tolar must also establish that he has sustained "actual damages." TEX. INS. CODE. ANN. §541.151 (Vernon 2009); *Vaughan v. Hartford Casualty Ins. Co.*, 277 F.Supp.2d 682, 690 (N.D. Tex. 2003).

At the summary judgment stage, Allstate must establish the absence of an essential element for each of Tolar's claims. In its Motion, Allstate argues that Tolar fails to establish the damages element required for both claims. (Def.'s Br. Mot. Summ. J. 13-14.) Tolar's only argument he

suffered damages was that he received the ACV payment with depreciated GCOP and sales tax on October 5, 2007, but did not receive the full amount of GCOP and sales tax until after repairs were completed on December 7, 2007. (Pl.'s Br. Resp. Def.'s Mot. Summ. J. 17.) Tolar does not deny that he recovered the full replacement cost for his damaged property.

Having determined that depreciation of GCOP and sales tax is proper, the two-month period of time between the ACV payment and the replacement cost payment is not a delay, as Tolar suggests, but rather is payment in accordance with the terms of the Policy. *Ghoman*, 159 F.Supp.2d at 935 ("To be sure, what is contemplated is that, ordinarily, actual cash value will be less than replacement cost; thus, the insurer will first pay the lesser amount; and then, upon completion. . .will pay the difference between actual cash value and replacement cost. . ."). The Court finds that Tolar fails to raise a genuine issue of material fact with respect to damages. Because this essential element of Tolar's claims is lacking, the Court **GRANTS** Allstate's Motion for Summary Judgment with respect to the breach of contract and unfair practices claim.

*C. Primary Jurisdiction*

In its Motion for Summary Judgment, Allstate alternatively argues that the case should be stayed under the doctrine of primary jurisdiction to allow the Texas Department of Insurance to make a determination as to whether depreciation of GCOP and sales tax is proper in calculating ACV. (Def.'s Br. Mot. Summ. J. 14-16.)

The doctrine of primary jurisdiction is designed to "allocate[] power between courts and administrative agencies when both are authorized to make initial determinations in a dispute." *American Capitol Ins. Co. v. Montemayor*, 2003 WL 1561451 at *3 (Tex. App.–Austin, Mar. 27, 2003) citing *Butnaru v. Ford Motor Co.*, 84 S.W. 3d 198, 208 (Tex. 2002). Texas law encourages,

but does not require, that trial courts to defer to agency decisions when "(1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *Hancock v. Chicago Title Ins. Co.*, 635 F.Supp.2d 539, 559 (N.D. Tex. 2009) quoting *Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 240 S.W.3d 418, 432 (Tex. App. 2007, pet. filed).

This is a straightforward contract interpretation case which does not involve particularly complex issues under the purview of the TDI. *Cf. Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 272 (Tex. App.–Austin July 26, 2002) (invoking the doctrine of primary jurisdiction where the case involved "many more complex issues than simple contract interpretation.") For the reasons discussed above, the Policy unambiguously allows the depreciation, but not deduction, of GCOP and sales tax when calculating the initial ACV payment. Accordingly, the Court sees no "great benefit" to staying the case and waiting for a TDI interpretation of the issues involved. Defendant's Motion to Stay Under the Doctrine of Primary Jurisdiction is **DENIED.**

## IV.

## CONCLUSION

The Court finds that the Policy unambiguously allows the depreciation of GCOP and sales tax. Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment. Because deduction of GCOP and sales tax is not improper, the Court finds that Tolar fails to establish the damages element on both his breach of contract and unfair claim settlement practices claims. The Court **GRANTS** Defendant's Motion for Summary Judgment with respect to both of Tolar's claims. The Court **DENIES** Defendant's Motion to Stay Under the Doctrine of Primary Jurisdiction.

SO ORDERED.

SIGNED March 22, 2011

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE